J-S31043-16

2016 PA Super 131

COMMONWEALTH OF PENNSYLVANIA,   :    IN THE SUPERIOR COURT OF
                                          :            PENNSYLVANIA
           Appellee            :
                             :
            v.                 :
                             :
RASHAWN TAHI KNOX,           :
                             :
           Appellant         :     No. 935 MDA 2015

Appeal from the Judgment of Sentence May 12, 2015
in the Court of Common Pleas of Dauphin County,
Criminal Division, at No(s): CP-22-CR-0000772-2014

BEFORE: SHOGAN, OTT, and STRASSBURGER[*], JJ.

OPINION BY STRASSBURGER, J.:            **FILED JUNE 21, 2016**

Rashawn Tahi Knox (Appellant) appeals from the judgment of sentence imposed following his convictions for criminal attempt homicide, aggravated assault, robbery, criminal conspiracy, persons not to possess a firearm, and carrying a firearm without a license. We vacate Appellant's judgment of sentence and remand for a new trial.

This case arises from an incident that occurred during a drug transaction between Jerrell Thompson (Thompson) and Appellant. His conviction was based upon evidence which the trial court summarized as follows:

> Officer Donald Bender of the Harrisburg Bureau of Police testified. On September 13, 2013, Office Bender was on patrol duty in the city of Harrisburg. He was dispatched to the intersection of Crescent and Kittatinny Streets for multiple

---

*Retired Senior Judge assigned to the Superior Court.

reports of multiple gunshots. He arrived at the scene about 4:45 p.m. and began to look for any active shooting. Finding none, and finding no immediate danger, he began to interview witnesses. He instructed other officers who arrived nearly simultaneously to secure the crime scene, which they did. Witnesses indicated that the victims had left in a van and the officers did not observe anyone who might be a suspect.

[Thompson], a victim, testified next. [] Thompson is currently incarcerated in Cumberland County Prison for both a parole violation and a theft. About three years prior to the incident, [] Thompson began using heroin. By August or September of 2013, he was using it on a daily basis. He purchased it in Harrisburg from someone named "Tip", whom he identified as the Appellant. He would contact Appellant by cell phone, both calls and texts. They would then meet up somewhere in Harrisburg, often in the Hall Manor area.

Two days prior, September 11, 2013, [] Thompson had arranged to meet Appellant to buy heroin. They made the trade and as [] Thompson walked away, he saw a lot of policemen converge on the van that Appellant was driving. He saw Appellant jump out of the van and start running and then [] Thompson also ran. As far as he could see, Appellant was able to elude the police. [] Thompson denied having contacted police or having any connection to that raid. He agreed that it was suspicious that the police converged upon Appellant just after their deal.

Usually [] Thompson would buy a bundle (about ten bags) for himself and other users. On the last occasion he set up a purchase, [] Thompson was planning on buying ten bundles for him and others. [Appellant] instructed [] Thompson to meet him at the dead end of Crescent Street.

Once [] Thompson and his compatriots arrived, they parked and waited for Appellant. He arrived and [] Thompson got out of the van to walk with him. The two of them walked around a corner and [] Thompson saw another man standing there. [] Thompson and Appellant were speaking about the incident on September 11 when the other man pulled out a gun as did Appellant. Neither Appellant nor the other man with a gun seemed surprised to see each other or that they both had

- 2 -

guns. [] Thompson ran off towards the van, he ran first to the passenger's side, but in an attempt to avoid getting shot in the back, he then ran to the driver's side. Appellant ran to the front of the car and started shooting. The driver [Starr Shopp] was hit and then [] Thompson was shot in the back.

…Det. Iachini was dispatched to Harrisburg Hospital on September 13, 2013, related to a shooting. … Following [his] investigation, Det. Iachini developed a suspect and created a photo array. He met with [] Thompson on September 20, 2013, at the hospital and [] Thompson identified Appellant from the photo array.

Trial Court Opinion (TCO), 9/29/2015, at 1-3, *** 7-8 (footnotes and citations omitted).

In October 2013, Appellant was arrested for his role and charged with, *inter alia*, criminal attempt homicide, aggravated assault, robbery, criminal conspiracy, persons not to possess a firearm,[1] and carrying a firearm without a license. Prior to trial, the Commonwealth filed a pre-trial motion, seeking to allow testimony to be presented regarding Appellant's prior drug sales and reference to the September 11, 2013 incident in accordance with Pa.R.E. 404(b). Appellant objected to the evidence, contending that the prejudice outweighed the probative value. After a brief hearing, the trial court granted the Commonwealth's motion.[2]

_____

[1] This charge was bifurcated from the remaining offenses.

[2] Later, after the start of the trial but before closing statements, the trial court amended its ruling. Specifically, while allowing testimony that referenced the September 11 drug transaction and the police converging upon Appellant's vehicle after the sale, the trial court disallowed testimony regarding the drugs and firearm found in Appellant's vehicle on September

Appellant proceeded to trial, which was held on March 10-11, 2015. Following the conclusion of trial, the jury found Appellant guilty of the aforementioned crimes. On May 12, 2015, the trial court sentenced Appellant to an aggregate term of incarceration of 20 to 40 years and a consecutive term of ten years of probation. This timely filed appeal followed.[3]

Appellant states the following issues for this Court's consideration, which we have re-ordered for ease of disposition:

I. Whether the trial court erred in admitting testimony of Appellant's prior drug sales as evidence of prior bad acts under Pennsylvania [r]ule of [e]vidence 404(b) and where the probative value was outweighed by the prejudice to Appellant?

II. Whether the trial court erred in allowing the Commonwealth to present evidence of [a Spanish] speaking witness without a certified interpreter by instead allowing another trial witness to interpret, in violation of the Court and Administrative Proceeding Interpreter Certification Law (Act 172 of 2006) and in violation of Appellant's [d]ue [p]rocess [r]ights under the United States and Pennsylvania Constitutions?

III. Whether the trial court erred in denying Appellant's motion for a mistrial where the Commonwealth engaged in prosecutorial misconduct by presenting facts not in evidence including references to guns and drugs that were excluded by the Court's pre-trial rulings to the jury in closing?

_____

11 and his statements to the police regarding the evidence found in his car. **See** N.T., 3/11/2015, at 254-57.

[3] Both Appellant and the trial court complied with Pa.R.A.P. 1925.

Appellant's Brief at 8 (footnotes and suggested answers omitted).

We first address Appellant's issue that the trial court erred by allowing testimony of Appellant's prior drug transactions as permissible evidence under Pa.R.E. 404(b). Appellant avers the prejudice to him caused by the introduction of this evidence outweighed the probative value. Specifically, Appellant contends "the introduction of prior bad acts evidence was not necessary to prove motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident. The crimes that were charged did not arise out of, nor were they caused by the prior bad acts that the Commonwealth sought to and did in fact introduce at trial." Appellant's Brief at 24. Based on the accounts of Thompson and Shopp, Appellant avers the evidence of prior drug transactions between himself and Thompson were unnecessary, "particularly where [Thompson and Shopp testified] that they [could] identify Appellant as the shooter." *Id.* at 26.

In determining whether the trial court properly allowed testimony of Appellant's prior bad acts, we are mindful that "[e]vidence of crimes other than the one in question is not admissible solely to show the defendant's bad character or propensity to commit crime." *Commonwealth v. Collins*, 703 A.2d 418, 422 (Pa. 1997); *see also* Pa.R.E. 404(b)(1) ("Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance

with the character"). Nevertheless, "[t]his evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Pa.R.E. 404(b)(2); *see also Commonwealth v. Melendez–Rodriguez*, 856 A.2d 1278, 1283 (Pa. Super. 2004) (explaining that evidence of other crimes is admissible to show, *inter alia*, motive, intent, absence of mistake or accident, common scheme or plan, and identity). "In order for evidence of prior bad acts to be admissible as evidence of motive, the prior bad acts 'must give sufficient ground to believe that the crime currently being considered grew out of or was in any way caused by the prior set of facts and circumstances.'" *Id.* (quoting *Commonwealth v. Reid*, 811 A.2d 530, 550 (Pa. 2002)).

In its 1925(b) opinion, the trial court offered the following analysis:

In the present case, [the trial court] permitted the prosecutor to present evidence of a prior drug deal in order to establish motive and/or identity. The incident on September 11, 2013, certainly helped provide the identity of the shooter in that [] Thompson was able to identify his assailant [from] September 13 as the same man, "Tip" [] that he had bought drugs from before on at least September 11. Further, [] Thompson's testimony regarding police swarming his dealer's van could certainly also provide a motive for the dealer to exact revenge upon [] Thompson.

Specifically, [the trial court] did find this very probative of identity. [] Thompson's prior interactions with Appellant were necessary [to] establish that he knew Appellant and would recognize him on September 13. Evidence of heroin and a firearm being [in the] van that police swarmed was excluded as too prejudicial. The prior interaction was not presented to prove Appellant's character, indeed Appellant was not even charged

- 6 -

with any drug crimes on this docket. It was merely to prove that [] Thompson knew him and could identify him and also to show that the short time frame between the raid on Appellant's van and his September 11 sale might provide motive for Appellant to attempt to murder [] Thompson.

TCO, 9/29/2015, at 11.

Upon review, we agree with the trial court that the evidence of the September 11, 2013 drug transaction between the Thompson and Appellant was probative and admissible to prove motive and/or identity. As stated previously, Appellant and Thompson knew each other because Thompson had previously bought drugs from Appellant. Furthermore, testimony at trial indicated that just two days prior to the shooting, Appellant's vehicle was swarmed by police immediately after a drug transaction between Appellant and Thompson. N.T., 3/10/2015, at 58-60. Thus, evidence relating to the prior interactions with Appellant was admissible to establish Thompson knew who Appellant was and what he looked like. Similarly, evidence of the September 11 drug transaction was admissible to establish the existence of a motive. Moreover, during trial, the court amended its ruling to ensure that more prejudicial aspects of the testimony, such as the drugs recovered from the van Appellant was seen entering after the transaction, were disallowed. Under these circumstances, we cannot find the evidence was more prejudicial then probative. No relief is due.

Appellant also challenges the trial court's decision to permit a Spanish-speaking witness to testify without a certified interpreter. At trial, witness

Dalvin Rosario (Rosario) was called by the prosecution. Rosario stated on the stand that he could not recall the date in question or the contact he had with police. N.T., 3/11/2015, at 152. Upon inquiry, he agreed that reading the statement he gave to police would help to refresh his recollection. *Id.* Once handed the statement to read, Rosario relayed to the prosecutor, Deputy District Attorney Christopher Jason (DDA Jason) that he could not read English very well. *Id.* at 153. DDA Jason asked if it would help having his sister, Lady Marte (Marte) who had previously testified, assist in translating. Rosario stated it would. *Id.* Appellant's counsel requested a sidebar which was not transcribed, and after returning to on-the-record testimony he stated that he was "renewing [his] objection that if [Marte is] translating now what [DDA Jason] is saying, I think we would require a certified interpreter." *Id.* at 155. The trial court overruled Appellant's objection, swore Marte in as a translator and permitted her to translate. Later, after Rosario's testimony concluded and other witnesses had testified, and trial had resumed following a lunch break, Appellant's counsel moved for a mistrial on the basis that the individual translating for Rosario was not a certified interpreter. The trial court denied Appellant's motion.[4] *Id.* at 257-58.

---

[4] Appellant does not argue that the trial court erred in denying his motion for a mistrial.

Appellant contends that the trial court was obligated to determine if a certified interpreter was available before allowing Marte to translate for Rosario, but failed to do so. Appellant's Brief at 21; N.T., 3/11/2015, at 153. Furthermore, Appellant avers there was "no indication on the record that [Marte] was qualified in any way as an interpreter," "there is no way of knowing whether the questions asked by counsel were correctly interpreted by [Marte]," and "there is an overwhelming potential for bias and corruption of [Rosario's] testimony due to the fact that his sister is the unqualified individual interpreting, and there was no other officer of the court present that would have been able to interpret or understand Spanish." Appellant's Brief at 20-22.

The statute governing the use of interpreters states, in relevant part, as follows:

**(a) Appointment of certified interpreter.--**Upon request or *sua sponte*, if the presiding judicial officer determines that a principal party in interest or witness has a limited ability to speak or understand English, then a certified interpreter shall be appointed, unless the certified interpreter is unavailable as provided in subsection (b).

**(b) Appointment of otherwise qualified interpreter.--**
(1) An otherwise qualified interpreter shall be appointed by the presiding judicial officer if a good faith effort was made to obtain a certified interpreter and a certified interpreter was not reasonably available, as determined by the presiding judicial officer.

(2) Prior to the appointment of the otherwise qualified interpreter, the presiding judicial officer, pursuant to general

rule, shall state on the record that a certified interpreter is not available and that the otherwise qualified interpreter:
(i) is readily able to interpret; and

(ii) has read, understands and agrees to abide by the code of professional conduct for court interpreters for persons with limited English proficiency, as established by the Court Administrator.

42 Pa.C.S. § 4412

"As a general rule, the determination of whether an interpreter is warranted in a particular case is within the sound discretion of the [trial] court." ***In re Garcia***, 984 A.2d 506, 511 (Pa. Super. 2009) (citations omitted).

At the outset, we note the trial court's failure to appoint a certified interpreter was undeniably an error. By allowing Marte to translate on behalf of her brother, the trial court found that a translator was needed for Rosario to continue testifying. Upon such discovery that an interpreter was necessary, the court was obligated to appointed a certified interpreter. ***See*** 42 Pa.C.S. § 4412: ("Upon request or s*ua sponte*, if the presiding judicial officer determines that a principal party in interest or witness has a limited ability to speak or understand English, then a certified interpreter **shall** be appointed." (emphasis added)). While the rule does allow for an interpreter who is not certified to translate, the trial court is first required to show that a "good faith effort was made to obtain a certified interpreter and a certified interpreter was not reasonably available, as determined by the presiding judicial officer." ***Id.*** The record is void of any indication that the trial court

attempted to locate a certified interpreter, or determine if one was available. Instead, the trial court overruled Appellant's objection and allowed another Commonwealth witness to translate on Rosario's behalf. This is a clear error and in direct contradiction to the procedure set forth in 42 Pa.C.S. § 4412.

In response to Appellant's arguments, both the trial court and the Commonwealth contend the court's error was harmless. ***See*** Commonwealth's Brief at 20. ***See also*** TCO, 9/29/2015, 15. We disagree. While we acknowledge Rosario answered most of the questions, given in English, without assistance from Marte, the record clearly indicates that there are times that are not transcribed, where Marte and Rosario converse in Spanish, followed by Rosario answering a question. Of particular concern is the following transcribed interaction between Marte, Rosario, and DDA Jason:

> DDA Jason: Now, you saw the person wearing – wearing black. And was this a white person? A—
>
> Rosario: **(Without [Marte's] assistance, the witness spoke in English***): ***Yeah.
>
> DDA Jason: --Hispanic person? What kind of person?
>
> Rosario: **(After [Marte] spoke in Spanish, the witness spoke in English): No, he was black.**

N.T., 3/11/2015, at 158-59 (emphasis original). This Court cannot possibly discern what Marte said in Spanish to her brother due to the lack of transcription, but it is clear that at key points in his testimony Rosario

required the assistance of his sister when answering important questions, such as the identification of the perpetrator.[5]

We likewise disagree with the Commonwealth's assertion that Appellant has failed to show prejudice because there was never any question raised at his trial that "what Marte was translating to Rosario in Spanish was not a true and accurate translation." Commonwealth's Brief at 19. While Appellant's counsel certainly was able to cross examine Rosario on his testimony, counsel, who apparently does not speak Spanish,[6] had no available resource to determine if the translations were correct or if the independent conversations between Marte and Rosario were proper, especially in light of the fact that Marte was a Commonwealth witness who previously testified. Under these circumstances, we cannot find that failing to appointed a certified interpreter or properly follow the rules in appointing an "otherwise qualified interpreter" was harmless error.

In conclusion, we agree that the trial court properly allowed evidence of the prior drug transaction between Appellant and Thompson and the resulting converging of police on Appellant's vehicle Further, we find the trial court's failure to determine if a certified interpreter was available and if

---

[5] Appellant is African American.

[6] Appellant stated within his brief that "there was no other officer of the court present [who] would have been able to interpret or understand Spanish." Appellant's Brief at 22.

so appoint him or her was reversible error. For this reason, we vacate Appellant's judgment of sentence and grant him a new trial.[7]

Judgment of sentence vacated. Case remanded for further proceedings consistent with this opinion. Jurisdiction relinquished.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/21/2016

---

[7] Because we remand Appellant's case for a new trial, his third issue, regarding prosecutorial misconduct during closing arguments, is moot. The Commonwealth now has the necessary time and notice to remove the slides from its presentation that contains information previously excluded by the trial court.