J-S51008-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
OMAR ROBINSON, :
:
        Appellant : No. 2790 EDA 2017

Appeal from the Judgment of Sentence February 28, 2017
In the Court of Common Pleas of Northampton County
Criminal Division at No.: CP-48-CR-0001347-2015

BEFORE: DUBOW, J., NICHOLS, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY DUBOW, J.:                          **FILED APRIL 02, 2019**

Appellant, Omar Robinson, appeals from the Judgment of Sentence entered by the Northampton County Court of Common Pleas following his convictions after a jury trial of First-Degree Murder and Criminal Conspiracy.[1] Appellant challenges the admission at trial of evidence that he was involved in a drug deal the same day of the murder, as well as the trial court's denial of his Motion for a mistrial after the prosecutor identified Appellant as a drug dealer during opening statements. We affirm.

On November 23, 2012, the narcotics division of the Easton Police Department was involved in an ongoing investigation targeting the home of Corey Reavis. That day, officers conducted a controlled purchase of heroin from Patrick Hughes using a confidential informant. Police officers observed

_____

[1] 18 Pa.C.S. § 2502(a) and 18 Pa.C.S. § 903, respectively.

Hughes leave Reavis's home, walk to the informant, engage in a brief hand-to-hand transaction, and return to Reavis's home. When Hughes returned to Reavis's home, police observed Hughes interact with individuals on the front porch, including Appellant. Police took photographs of Appellant, Hughes, and the transaction. Police also observed Appellant's minivan parked outside the residence.

Later that day, Appellant and Hughes shot and killed Ervin Holton ("Victim") in Easton.[2] A witness who was driving near the scene called 911 to report the shooting. She stated that, after hearing the gunshots, she saw two individuals in dark clothing running toward a nearby minivan. The Victim died from multiple gunshot wounds; ballistics evidence confirmed that there were two shooters.

During the subsequent investigation, detectives from the Easton Police Department obtained consistent surveillance video that showed two individuals exit a minivan one block from the crime scene, walk towards the location of the shooting, and shortly thereafter, run back towards the minivan and drive away. Police officers also learned that Appellant's girlfriend, Lisa Doorley, owned the minivan.

---

[2] The Victim and Hughes were rival drug dealers and may have been in a dispute about Nicole Greene, the woman they both dated. N.T. Trial, 1/10/17, at 31-32.

When police officers located the minivan at Appellant's home, which he shared with Doorley, Appellant confirmed that only he and Doorley drive the minivan, and that he did not allow anyone else to drive the minivan. Upon confirming that he had been driving the minivan on the night of the murder, Appellant started crying. Police searched the minivan with Doorley's consent and found gunshot residue on the steering wheel and the driver's side interior door handle.

Homicide detectives also learned that Appellant and Hughes had spent much of the day together before the murder. Reavis confirmed that he had been hanging out with Appellant and Hughes that day. Reavis admitted that he had driven and dropped off the Victim at a store near the scene of the murder shortly before Appellant and Hughes murdered him.

Also, cell phone records from Appellant and Hughes confirmed their whereabouts in south Easton, where the shooting occurred, and their close proximity to the area and each other when they placed the calls. The eyewitness called 911 at 5:39 P.M., and the cell phone records showed that Appellant and Hughes made numerous calls to Reavis before and after the murder. All calls stopped at the precise time of the shooting, consistent with the surveillance video.

During the investigation, Hughes provided several different, inconsistent, and unsubstantiated alibis to police investigators. After his arrest, Hughes made several incriminating statements to fellow inmates (1)

- 3 -

regarding his motive for the murder, and (2) claiming that he and his men were responsible for the murder.

Thereafter, the Commonwealth charged Appellant with Criminal Homicide and Criminal Conspiracy. In October 2015, the trial court granted the Commonwealth's Motion to try Appellant and Hughes jointly.

On August 16, 2016, the Commonwealth filed a Motion *in Limine* seeking to introduce "prior bad acts" evidence pursuant to Pennsylvania Rule of Evidence 404(b) of the drug transaction between the confidential informant and Hughes earlier on the day of the murder. On November 14, 2016, the trial court granted the Commonwealth's Motion, concluding that the evidence of the drug deal was relevant and admissible to show: (1) the motive of Appellant and Hughes for the shooting; and (2) the complete story of the case. The trial court also concluded that the probative value of the evidence outweighed its potential for prejudice, particularly with the provision of appropriate cautionary jury instructions. *See* Trial Court Opinion, 11/14/16, at 2-7.

In January 2017, Appellant and Hughes proceeded to an eight-day jury trial. During opening statements, the prosecutor stated, "You're going to hear testimony that these two guys are drug dealers. We don't know whether this execution had something to do with drugs. It may very well have. We don't know whether this execution had something to do with drug debts." N.T. Trial,

1/10/17, at 32.[3]  Appellant moved for a mistrial based on these comments, which the trial court denied.  The trial court provided a cautionary jury instruction, informing jurors that the defendants were not on trial for being drug dealers and they may not convict the defendants of homicide on this basis.  *Id.* at 87.

The Commonwealth presented testimony from numerous witnesses, including Reavis, Greene, the Northampton County coroner, and numerous detectives and police officers.  Appellant and Hughes did not testify and presented no evidence.

On January 20, 2017, the jury convicted Appellant of First-Degree Murder and Criminal Conspiracy.[4]

On February 28, 2017, the trial court sentenced Appellant to life imprisonment without parole.[5]  Appellant filed a timely Post-Sentence Motion, which the trial court denied on August 4, 2017.

_____

[3] The Commonwealth also argued that the motive for the shooting was a romantic rivalry between the Victim and Hughes.  N.T. Trial, 1/10/17, at 31-32.

[4] The jury also convicted Hughes of First-Degree Murder and Criminal Conspiracy, and the trial court sentenced him to life imprisonment without parole.  Hughes also filed a direct appeal to this Court, which remains pending at docket No. 2853 EDA 2017.

[5] The trial court imposed a concurrent term of 20 to 40 years' incarceration for the Criminal Conspiracy conviction.

On August 17, 2017, Appellant filed a Notice of Appeal. Both Appellant and the trial court complied with Pa.R.A.P. 1925.[6]

Appellant presents two issues for our review:

1. Did the [t]rial [c]ourt err by permitting evidence that [Appellant] was present at a drug transaction earlier in the day of the subject homicide?

2. Did the [t]rial [c]ourt err when it did not declare a mistrial after the [p]rosecutor's opening remarks identified [Appellant] as a drug dealer?

Appellant's Brief at 5.

## Pa.R.E. 404(b) – Prior Bad Acts

In his first issue, Appellant challenges the admission of evidence "that [Hughes] participated in a drug transaction earlier in the day of the subject homicide and that [Appellant] was present at the transaction." Appellant's Brief at 10. Appellant avers that "[a]llowing the jury to see and hear evidence that [Appellant] was at a drug transaction earlier in the day of the homicide was not necessary to complete the story and was severely prejudicial." *Id.* at 16.

---

[6] Appellant filed his Rule 1925(b) Statement late, but the trial court nonetheless addressed the issues contained in the untimely Statement, including the two briefed issues. Accordingly, we will also address the merits of Appellant's two issues. *See Commonwealth v. Burton*, 973 A.2d 428, 433 (Pa. Super. 2009) (*en banc*) (explaining that "this Court may decide the appeal on the merits if the trial court had adequate opportunity to prepare an opinion addressing the issues being raised on appeal.").

The "[a]dmission of evidence is within the sound discretion of the trial court and will be reversed only upon a showing that the trial court clearly abused its discretion." **Commonwealth v. Tyson**, 119 A.3d 353, 357 (Pa. Super. 2015) (*en banc*) (citation and quotation omitted). "Accordingly, a ruling admitting evidence will not be disturbed on appeal unless that ruling reflects manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support to be clearly erroneous." **Commonwealth v. Huggins**, 68 A.3d 962, 966 (Pa. Super. 2013) (citations and internal quotations omitted).

Pennsylvania Rule of Evidence 404(b) prohibits evidence of a defendant's prior bad acts "to prove a person's character" or demonstrate "that on a particular occasion the person acted in accordance with the character." Pa.R.E. 404(b)(1). Nevertheless, the Rule also provides that prior bad acts evidence "may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Pa.R.E. 404(b)(2).

"In order for evidence of prior bad acts to be admissible as evidence of motive, the prior bad acts must give sufficient ground to believe that the crime currently being considered grew out of or was in any way caused by the prior set of facts and circumstances." **Commonwealth v. Knox**, 142 A.3d 863, 866-67 (Pa. Super. 2016) (quotation marks and citations omitted). Although consideration of these claims is often very fact dependent, this Court has

previously admitted evidence of prior drug deals to establish motive for a subsequent crime. *See*, *e.g.*, *id.* at 867 (concluding the trial court properly admitted evidence of a prior drug transaction between defendant and victim as relevant and probative of defendant-shooter's identity and motive of revenge); *Commonwealth v. Collins*, 70 A.3d 1245, 1252 (Pa. Super. 2013) (concluding trial court did not abuse its discretion in admitting evidence that co-defendants and victim were members of rival drug distribution organizations in order to link them and suggest a motive for the killing, particularly where the trial court issued a cautionary jury instruction).

In addition, Rule 404(b)(2) provides a *res gestae* exception to prior bad acts evidence that "permits the admission of evidence where it became part of the history of the case and formed part of the natural development of facts." *Commonwealth v. Ivy*, 146 A.3d 241, 251 (Pa. Super. 2016). "In a criminal case[,] this evidence is admissible only if the probative value of the evidence outweighs its potential for unfair prejudice." Pa.R.E. 404(b)(2). *See also* Daniel J. Anders, Ohlbaum on the Pennsylvania Rules of Evidence § 404.11 *et seq*. (2019 ed. LexisNexis Matthew Bender). "Where evidence of prior bad acts is admitted, the defendant is entitled to a jury instruction that the evidence is admissible only for a limited purpose." *Ivy*, 146 A.3d at 251 (citation omitted). "It is well settled that the jury is presumed to follow the trial court's instructions[.]" *Commonwealth v. Cash*, 137 A.3d 1262, 1280 (Pa. 2016) (citation omitted).

In this case, the Commonwealth presented evidence that, on the same day of the murder, Appellant and Hughes were together for much of the day. The narcotics division police officers watched as Hughes left Reavis's home, walked to the informant, engaged in a brief hand-to-hand transaction, and returned to Reavis's home where police officers observed Hughes interact with individuals on the front porch, including Appellant. Police officers took photographs of Hughes, the transaction, Appellant, and Appellant's minivan parked outside Reavis's residence.

The trial court concluded that the evidence of the drug transaction was relevant and admissible to show the defendants' motive for the shooting and to complete the story of the case. *See* Trial Court Opinion, 11/14/16, at 2-7.

We agree with the trial court's analysis and conclude that this evidence was admissible under Pa.R.E. 404(b)(2) as both motive for the shooting and as *res gestae* evidence. The drug transaction evidence, combined with the cell phone records, showed that Appellant and Hughes were together on the date of the murder with the minivan at a location targeted by the narcotics division for suspected drug activity. Evidence of their coordinated movements throughout the day supported the Commonwealth's conspiracy allegations against Appellant. Appellant's relationship with Hughes was consistent with the Commonwealth's theory that Hughes enlisted Appellant to help him kill the Victim. Moreover, the evidence was relevant to the circumstances leading up to and including the shooting, *i.e.*, the *res gestae*.

The trial court properly weighed the probative value of the evidence in the light of the potential for unfair prejudice in accordance with Pa.R.E. 404(b)(2).  Moreover, the trial court provided a cautionary jury instruction explaining the limited purpose of this evidence.  **See** N.T. Trial, 1/10/17, at 87-88.  We, thus, discern no abuse of the trial court's discretion in admitting this evidence.  Appellant is not entitled to relief.

**Prosecutorial Misconduct**

Appellant next contends that the trial court erred in refusing to grant his motion for a mistrial alleging prosecutorial misconduct during the opening statement when the prosecutor called him a drug dealer.  Appellant's Brief at 19-21.

We review a trial court's denial of a mistrial motion based on prosecutorial misconduct for abuse of discretion.  **Commonwealth v. Bryant**, 67 A.3d 716, 728 (Pa. 2013).  When considering a claim of prosecutorial misconduct, "our attention is focused on whether the defendant was deprived of a fair trial, not a perfect one[.]"  **Commonwealth v. Noel**, 53 A.3d 848, 858 (Pa. Super. 2012) (citation omitted).  **See also Bryant**, 67 A.3d at 728 (stating that "a trial court may grant a mistrial only where the incident upon which the motion is based is of such a nature that its unavoidable effect is to deprive the defendant of a fair trial by preventing the jury from weighing and rendering a true verdict."  (quotation marks and citation omitted)).  "[N]ot

- 10 -

every inappropriate remark by a prosecutor constitutes reversible error." **Noel**, 53 A.3d at 858 (citation omitted).

"While it is improper for a prosecutor to offer any personal opinion as to the guilt of the defendant or the credibility of the witnesses, it is entirely proper for the prosecutor to summarize the evidence presented, to offer reasonable deductions and inferences from the evidence, and to argue that the evidence establishes the defendant's guilt[.]" **Commonwealth v. Burno**, 94 A.3d 956, 974 (Pa. 2014) (citation omitted).

Appellant claims the court should have declared a mistrial based on the following assertions made by the prosecutor in his opening statement:

> This is a homicide. The Commonwealth alleges that on November 23[,] 2012, these two guys executed someone. They shot him down. Ervin Holton was shot to death because, at least the Commonwealth alleges, he was dating, intimate with a girl that Mr. Hughes believed belonged to him.
>
> You're going to hear testimony that these two guys are drug dealers. We don't know whether this execution had something to do with drugs. It may very well have. We don't know whether this execution had something to do with drug debts.

N.T. Trial, 1/10/17, at 31-32.[7]

Appellant claims that "the prosecutor knew that he had no evidence that [Appellant] was a 'drug dealer[.']  He only had evidence that he was present

---

[7] We acknowledge the language here is ambiguous and imprecise and the prosecutor's statement "these two guys" could refer to either Appellant and Hughes or Hughes and the Victim.  The prosecutor's subsequent statements suggest he was referring to Appellant and Hughes.

at a drug deal. As such he had no reasonable basis to believe he could prove that fact." Appellant's Brief at 21. Appellant avers that the trial court's cautionary jury instructions could not cure the resulting unfair prejudice because the prosecutor "caused the jury to form an unlawful bias toward him throughout the rest of the trial." *Id.*

Contrary to Appellant's contention, this statement does not represent actionable prosecutorial misconduct. Our review of the record and the prosecutor's entire statement shows that he was explaining to the jury what he expected the evidence to show, namely, that police photographed both Appellant and Hughes together at Reavis's home, which the narcotics division had targeted for drug surveillance, on the same day as the murder. Because the trial court had previously granted the Commonwealth's Motion to admit the evidence of the drug deal to show the defendants' motive for the shooting and the complete story of the case, it was not misconduct for the prosecutor to state in his opening statement what he expected the evidence to show.

Moreover, the trial court's curative instructions before and after the opening statements appropriately cautioned the jury that the statements of counsel did not constitute evidence and explained the limited use of the evidence about the drug deal. *See* N.T. Trial, 1/10/17, at 27 ("statements and argument of the attorneys . . . are not binding on you and they're not evidence . . ."); *id.* at 29 ("Statements, arguments, questions, and comments by lawyers are not evidence."); *id.* at 87-88 (explaining, *inter alia*, "This

evidence may be considered as possible motive. However, the defendants are not on trial for being drug dealers. You may not convict the defendants merely because you may find that they may have been involved with drug activity.").

In light of the foregoing, we conclude that the trial court did not abuse its discretion in denying Appellant's request for a mistrial based on his claims of prosecutorial misconduct.

Judgment of Sentence affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 4/2/19