J-A02028-20

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ESAD LEMO | : | |
| | : | |
| Appellant | : | No. 922 WDA 2018 |

Appeal from the Judgment of Sentence Entered March 20, 2009
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s):  CP-02-CR-0013042-2006

BEFORE:  SHOGAN, J., OLSON, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY OLSON, J.:                    FILED JUNE 11, 2020

Appellant, Esad Lemo, appeals from the March 20, 2009 judgment of sentence of life imprisonment without the possibility of parole after Appellant was convicted, in a non-jury trial, of first-degree murder.[1]  We affirm.[2]

A prior panel of this Court summarized the factual and procedural history as follows:

_____

[1] 18 Pa.C.S.A. § 2502(a).

[2] On March 30, 2020, Appellant filed a letter drawing this Court's attention to our Supreme Court's recent decision in Commonwealth v. Diaz, 2020 WL 1479846 (Pa. March 26, 2020) (slip opinion).  The Commonwealth filed a response to Appellant's letter that same day.  The Prothonotary for this Court identified Appellant's letter as a motion pursuant to Pa.R.A.P. 2501(b).  Although we understand this letter to be required notification, pursuant to Rule 2501(b), of a change in authoritative law relied upon in a party's brief, to the extent this letter was deemed to be a motion, it should be granted as we have considered the material identified therein.

[Appellant] engaged in a pattern of physical and sexual abuse of his wife during their marriage. After she left him and filed for divorce, [Appellant] drove to her residence, observed her on the street, made a U-turn, and then deliberately drove his car into his wife and propelled her against a wall, instantly killing her.

Commonwealth v. Lemo, [2011 WL 7118829 (Pa. Super. October 6, 2011) (unpublished memorandum).]

After taking him to a local hospital for medical evaluation, police questioned [Appellant]. [Appellant] is a Bosnian immigrant who apparently neither reads nor writes the English language and whose spoken English is less than rudimentary; accordingly, police arranged for a local Serbo-Croatian[3] immigrant to translate the reading of [Appellant's] Miranda[4] rights and the subsequent interrogation. After waiving his rights, [Appellant] told police that he had blacked out at the time of the incident. When confronted with another prior statement that the car's brakes had failed, [Appellant] admitted to striking his wife with the car.

Before his preliminary hearing, [Appellant] filed a motion seeking involuntary commitment to a mental health facility. On August 31, 2006, [the trial court] denied the petition. The next day, the magisterial district court held [Appellant's] preliminary hearing and bound [Appellant's] case over on the single charge of criminal homicide.

On December 7, 2006, [Appellant] filed a second petition for involuntary commitment to a mental health facility. On December 14, 2006, the trial court granted this petition, committing [Appellant] to the care of Mayview State Hospital for 90 days. Throughout pre-trial discovery and motions practice, a number of physicians and psychologists evaluated [Appellant], using interpreters to ensure that [Appellant] could effectively participate in these evaluations. Both the Commonwealth and [Appellant's counsel] amassed a large amount of information on his mental state in anticipation of a diminished-capacity defense, which indicated that, at a minimum, [Appellant] had borderline mental retardation.

_____

[3] Serbo-Croatian is a common language used by Bosnians.

[4] Miranda v. Arizona, 384 U.S. 436 (1966).

- 2 -

On January 8, 2009, [Appellant] filed an omnibus pre-trial motion, which included a notice of mental infirmity defense and a motion to suppress statements police elicited from [Appellant] through the interpreted interrogation. With respect to the motion to suppress, [Appellant] asserted that he did not knowingly, intelligently, and voluntarily waive his Miranda rights. On January 21 and January 22, 2009, the trial court held a suppression hearing, after which it denied the motion. While it recognized that [Appellant] fell "within the purview of mental retardation," the trial court concluded that this condition "does not mean that he cannot understand what his rights are or that he is prohibited from waiving those particular rights."

At the end of the suppression hearing, [Appellant's] counsel told the trial court that [Appellant] was willing to waive his right to a jury trial and proceed [with a] non-jury [trial]. [Appellant's] counsel explained that he went "through the entire waiver with [Appellant] in which he explained everything in great detail with his translator." Counsel further explained that he "spent at least an hour just on the waiver for the non-jury trial and he was prepared to do the waiver again."

[Appellant's] trial commenced on March 12, 2009. At trial, [Appellant] presented a diminished-capacity defense, arguing that he was incapable of forming the intent required for murder, let alone premeditation. On March 16, 2009, the trial court found [Appellant] guilty of first-degree murder. On March 20, 2009, the trial court sentenced [Appellant] to life in prison without the possibility of parole.

On March 27, 2009, [Appellant] filed a post-sentence motion, challenging the weight of the evidence with respect to his intent to kill. Following a hearing, on May 27, 2009, the trial court denied the motion. [Appellant] was appointed new appellate counsel and timely appealed to this Court. On October 6, 2011, [this Court] affirmed [Appellant's] judgment of sentence. On November 9, 2011, [Appellant] filed a petition for allowance of appeal, which the Pennsylvania Supreme Court denied on June 1, 2012.[]

On August 1, 2014, [Appellant] filed a pro se []petition [pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. §§ 9541-9546]. On January 27, 2015, [Appellant] sought leave to supplement his PCRA petition. On March 4, 2015, the PCRA court issued an order appointing [counsel] to represent [Appellant] for the PCRA proceedings and granting [Appellant]

until May 4, 2015 to amend his PCRA petition. On April 9, 2015, PCRA counsel filed a motion for leave to withdraw and enclosed a Turner/Finley[5] [no-merit] letter. [PCRA counsel] served these documents on both [Appellant] and the Commonwealth, providing [Appellant] with transcripts of his pre-trial, trial, sentencing, and post-sentencing proceedings. On April 13, 2015, the PCRA court issued a notice of intent to dismiss the PCRA petition without a hearing [pursuant to Pa.R.Crim.P. 907]. On August 17, 2015, the PCRA court dismissed the PCRA petition. On August 27, 2015, [Appellant] filed a timely notice of appeal.

On July 14, 2015, before the PCRA court dismissed the petition, [Appellant] filed a petition for writ of habeas corpus pursuant to 28 U.S.C.[A.] § 2254 in the United States District Court for the Western District of Pennsylvania. On August 10, 2015, the district court appointed the Federal Public Defender's Office to represent [Appellant] in his habeas corpus action.[6] On February 18, 2016, [Appellant] filed a motion to expand the appointment of [the] Federal Public Defender[.] On February 22, 2016, the district court granted [Appellant's] motion[.]

Commonwealth v. Lemo, 2017 WL 3443802, at *1-3 (Pa. Super. August 11, 2017) (unpublished memorandum) (record citations, original brackets, original footnotes, and ellipses omitted).

This Court vacated the order dismissing Appellant's PCRA petition and remanded the case for an evidentiary hearing to determine if Appellant satisfied a jurisdictional time-bar exception in his untimely PCRA petition.[7] Id.

_____

[5] Commonwealth v. Turner, 544 A.2d 927 (Pa. 1988); Commonwealth v. Finley, 550 A.2d 213 (Pa. Super. 1988) (en banc).

[6] On November 16, 2015, the United States District Court stayed the habeas corpus action.

[7] The three narrow statutory exceptions to the PCRA jurisdictional time-bar are as follows: "(1) interference by government officials in the presentation of the claim; (2) newly discovered facts; and (3) after-recognized constitutional

at *1. On December 18, 2017, the PCRA court found that Appellant satisfied the governmental interference exception to the jurisdiction time-bar pursuant to 42 Pa.C.S.A. § 9545(b)(1)(i) and permitted Appellant to file an amended PCRA petition. On May 25, 2018, Appellant filed a motion to reinstate his direct appeal rights nunc pro tunc, which the Commonwealth did not oppose. The PCRA court reinstated Appellant's direct appeal rights nunc pro tunc on June 19, 2018. This appeal followed.[8]

Appellant raises the following issues for our review:

I.      Did the [trial] court err when it failed to comply with the applicable rules governing the mental health treatment and court-ordered examinations of [Appellant]?

II.     Did the [trial] court err when it proceeded with the suppression hearing even after being informed by the prosecutor that the interpreter had not been interpreting the proceedings for the non-English speaking [Appellant]?

III.    Did the trial court err in admitting evidence of uncorroborated, withdrawn, remote, and largely unadjudicated allegations of abuse relating to [Appellant's] family division litigation?

Appellant's Brief at 2 (extraneous capitalization omitted).

In his first issue, Appellant claims the trial court failed to comply with Pa.R.Crim.P. 569 when it ordered Appellant to submit to a mental health

_____

right." Commonwealth v. Brandon, 51 A.3d 231, 233-234 (Pa. Super. 2012), citing 42 Pa.C.S.A. § 9545(b)(1)(i-iii).

[8] Both Appellant and the trial court complied with Pa.R.A.P. 1925.

evaluation by the Commonwealth's expert witness without first apprising Appellant, in person and in the presence of his counsel, of his rights.[9] Appellant's Brief at 20-34.

_____

[9] Pennsylvania Rule of Criminal Procedure 569 states, in pertinent part,

> ### Rule 569. Examination of Defendant by Mental Health Expert
>
> (A) Examination of Defendant.
>
> . . . .
>
> (2) By Court Order.
>
> > (a) Upon motion of the attorney for the Commonwealth, if the court determines the defendant has provided notice of an intent to assert a defense of insanity or mental infirmity or notice of the intention to introduce expert evidence relating to a mental disease or defect or any other mental condition of the defendant pursuant to Rule 568, the court shall order that the defendant submit to an examination by one or more mental health experts specified in the motion by the Commonwealth for the purpose of determining the mental condition put in issue by the defendant.
> >
> > (b) When the court orders an examination pursuant to this paragraph, the court on the record shall advise the defendant in person and in the presence of defendant's counsel:
> >
> > > (i) of the purpose of the examination and the contents of the court's order;
> > >
> > > (ii) that the information obtained from the examination may be used at trial; and
> > >
> > > (iii) the potential consequences of the defendant's refusal to cooperate with the Commonwealth's mental health expert(s).

Pa.R.Crim.P. 569(A)(2)(a) and (b).

Before addressing the merits of Appellant's issue, however, we must first examine whether Appellant waived this issue. Appellant must concisely identify in his Rule 1925(b) statement the error that he intends to assert with sufficient detail to identify the issue for the trial court or the issue is waived. Pa.R.A.P. 1925(b)(4)(ii) (stating, "[t]he [s]tatement shall concisely identify each error that the appellant intends to assert with sufficient detail to identify the issue to be raised for the judge"); see also Pa.R.A.P. 1925(b)(4)(vii) (stating, "[i]ssues not included in the [s]tatement and/or not raised in accordance with the provisions of this paragraph (b)(4) are waived"). Appellant may choose to cite to appropriate authority or the record in order to provide sufficient detail, although it is not necessary. Pa.R.A.P. 1925(b)(4)(ii).

The trial court, in addressing Appellant's issue, stated, "[t]his claim of error fails to identify what [c]ourt rules were violated and what [c]ourt [o]rders were not followed in examining [Appellant]. Without identifying the failure that this [trial c]ourt allowed to occur, no meaningful discussion of these alleged claims can be made." Trial Court Opinion, 6/6/19, at 7 (footnote omitted).

The record demonstrates that the Commonwealth asked the trial court to order Appellant to submit to an examination by the Commonwealth's mental health expert, pursuant to Rule 569, in response to Appellant's plans to raise a diminished capacity defense at trial. Commonwealth's Motion for Court Order, 9/12/07, at 1 ¶1 and 2 ¶8. On September 18, 2007, the trial

court ordered the evaluation without advising Appellant, in person and in the presence of counsel, of the purpose of the examination, the contents of the trial court's order, the potential use at trial of the information obtained from the examination, and the potential consequences of a refusal to cooperate with the Commonwealth's mental health expert as specified in Pa.R.Crim.P. 569(A)(2)(b).[10] Trial Court Order, 9/18/07. Appellant, however, did not challenge the trial court's failure to adhere to the requirements of Rule 569, which, inter alia, insure a defendant was apprised of his constitutional rights prior to evaluation, in his omnibus pre-trial motion, at the suppression hearing, during trial, or in his post-trial motion. See Appellant's Omnibus Pre-Trial Motions, 1/9/08; see also N.T., 1/21-22/09; N.T., 3/12-13; 16/09; Appellant's Motion for New Trial, 3/27/09. Appellant, however, raised the issue concerning the trial court's failure to advise him of his rights prior to compelling his mental health exams by the Commonwealth's mental health expert in his Rule 1925(b) statement.

_____

[10] On December 4, 2008, the Commonwealth asked the trial court to order Appellant to submit to a second examination by the Commonwealth's mental health expert in response to Appellant's assertion that he did not have the requisite capacity necessary to waive his Miranda rights. Commonwealth's Motion for Psychiatric Visit, 12/4/08. The trial court, on December 5, 2008, ordered the evaluation without advising Appellant, in person and in the presence of counsel, of the purpose of the examination, the contents of the trial court's order, the potential use at trial of the information obtained from the examination, and the potential consequences of a refusal to cooperate with the Commonwealth's mental health expert as specified in Pa.R.Crim.P. 569(A)(2)(b).

Based upon our review of the record, we conclude that Appellant's Rule 1925(b) statement adequately identified the error for the trial court because the Commonwealth cited Rule 569 as authority to compel the mental health evaluation in its motion, which the trial court subsequently granted. Citation to procedural rules, decisional precedents, and statutory authority are not mandated by our appellate rules in the Rule 1925(b) concise statement. See Pa.R.A.P. 1925(b)(4)(ii). Appellant, however, waived his claim by failing to raise the issue before the trial court at the time the alleged error occurred. Pa.R.A.P. 302(a) (stating, "[i]ssues not raised in the [trial] court are waived and cannot be raised for the first time on appeal"); see also Commonwealth v. Strunk, 953 A.2d 577, 579 (Pa. Super. 2008) (stating, "trial judges must be given an opportunity to correct errors at the time they are made. A party may not remain silent and afterwards complain of matters which, if erroneous, the [trial] court would have corrected.") (citations, original brackets, and original quotation marks omitted). Consequently, we cannot review the merits of Appellant's claim.

Appellant's second issue raises a claim that the trial court violated his Sixth Amendment right to representation of counsel when it failed to provide an interpreter during a portion of his suppression hearing. Appellant's Brief at 35-52. Appellant's claim raises a question of law for which our standard of review is de novo and our scope of review is plenary. Commonwealth v. Yohe, 39 A.3d 381, 384 (Pa. Super. 2012), aff'd, 79 A.3d 520 (Pa. 2013), cert. denied, 572 U.S. 1135 (2014).

Our Supreme Court recently reiterated that the "Sixth Amendment to the United States Constitution and Article I, Section 9 of the Pennsylvania Constitution entitle a criminal defendant to the representation of counsel." Commonwealth v. Diaz, 2020 WL 1479846, at *9 (Pa. March 26, 2020) (slip opinion). "A criminal defendant's right to counsel guaranteed by the Sixth Amendment includes his right to consult with his attorney about the substance of trial during his trial (other than in the midst of his testimony)." Id. at *12. The failure of courts to provide an interpreter when the defendant is unable to understand what is being said due to language barriers and, therefore, cannot communicate with counsel about the proceedings violates the defendant's constitutional right to counsel. Id. The interpreter guarantees the defendant understands the proceedings in his native language and is able "to confer with counsel in the courtroom about the broad array of unfolding matters, often requiring immediate responses," including, inter alia, "discussions about 'tactical decisions,' trial strategy, witness testimony and lines of inquiry not yet pursued." Id. at *10-11.

Section 4412 of the Judicial Code states, in pertinent part,

§ 4412. Appointment of interpreter

(a) Appointment of certified interpreter.--Upon request or sua sponte, if the presiding judicial officer determines that a principal party in interest or witness has a limited ability to speak or understand English, then a certified interpreter shall be appointed, unless the certified interpreter is unavailable as provided in subsection (b).

(b) Appointment of otherwise qualified interpreter.--

(1) An otherwise qualified interpreter shall be appointed by the presiding judicial officer if a good faith effort was made to obtain a certified interpreter and a certified interpreter was not reasonably available, as determined by the presiding judicial officer.

(2) Prior to the appointment of the otherwise qualified interpreter, the presiding judicial officer, pursuant to general rule, shall state on the record that a certified interpreter is not available and that the otherwise qualified interpreter:

(i) is readily able to interpret; and

(ii) has read, understands and agrees to abide by the code of professional conduct for court interpreters for persons with limited English proficiency, as established by the Court Administrator.

42 Pa.C.S.A. § 4412(a) and (b). It is within the sound discretion of the trial court to make the determination of whether a defendant needs an interpreter; it is not within the trial court's discretion to determine whether a defendant is entitled to an interpreter. In re Garcia, 984 A.2d 506, 511 (Pa. Super. 2009).

On January 21 and January 22, 2009, the trial court conducted a suppression hearing in order to address Appellant's motion to suppress inculpatory statements Appellant made to the Allegheny County Police allegedly in violation of his Miranda rights. N.T., 1/21-22/09; see also Appellant's Omnibus Pre-Trial Motions, 1/9/09. Appellant asserted, inter alia, that he did not knowingly, intelligently, and voluntarily waive his Miranda rights prior to giving his inculpatory statement because he was unable to understand English when the police read him his rights. Appellant's Omnibus Pre-Trial Motions, 1/9/09, at ¶2. Appellant's counsel arranged to have his

own interpreter at the suppression hearing for purposes of aiding counsel in conferring with Appellant if the recording of Appellant's statements to the police was played at the suppression hearing after bring introduced into evidence.[11]  N.T., 1/21/09, at 3, 21.  Appellant's interpreter was sworn in at the start of the hearing.  Id. at 3.  The Commonwealth had its own interpreter present at the suppression hearing for the purpose of aiding the Commonwealth.  Id. at 5.

As the first witness at the suppression hearing, Allegheny Country Police Lieutenant William Palmer testified, inter alia, about the circumstances in which he read Appellant his Miranda rights in English and via a Bosnian translator before he obtained Appellant's inculpatory statement that he killed his wife.  Id. at 5-21.  After Lieutenant Palmer's testimony concluded and he was excused as a witness, the Commonwealth, before calling its next witness, brought to the trial court's attention, in the following exchange, that Appellant's interpreter was not interpreting the proceedings:

> [COMMONWEALTH]: Your Honor, I noticed that the interpreter is not interpreting anything that [Appellant]--I mean I just--for the sake of the record, I would like to know if [Appellant] is waiving that.  Since he is here, he would have a right to have everything translated to him.  He has an interpreter.  I wouldn't want there to be any problem with him saying later he didn't understand what was going on.

_____

[11] At the suppression hearing, the Commonwealth introduced into evidence a compact disc containing a recording of Appellant's statements to the police. N.T., 1/21/09, at 13.  The recording, however, was not played at the suppression hearing.  Therefore, Appellant's translator was not needed for the purpose stated by Appellant's counsel.

[APPELLANT'S COUNSEL]: Well, the things that I was going to discuss with him or have my interpreter go through with him would be things concerning the exchange, which I believe would be coming up when we are doing the tape. I can have him translate every little word.

[COMMONWEALTH]: It is his trial.

[APPELLANT'S COUNSEL]: To do it that way, then there would have to be a break so my translator can translate it because obviously he cannot translate simultaneous[ly] as to the way we're speaking. It's like what I'm doing right now.

THE COURT: Well, []I think [the Commonwealth has] a good point. Is he waiving his right to have every statement translated?

[APPELLANT'S COUNSEL]: Do we want to put this on record also, Judge?

THE COURT: Yes.

[APPELLANT'S COUNSEL]: [Appellant,] you have a right to hear every word that is spoken in this trial.

(Interpreter translates.)

([Appellant] nods head.)

[APPELLANT'S COUNSEL]: You have a right to have every word spoken in this trial translated for you by the interpreter that we have provided for you.

(Interpreter translates.)

[APPELLANT'S COUNSEL]: Your understanding of all the words that are said during this trial are important for you to aid in your defense.

(Interpreter translates.)

([Appellant] nods head.)

[APPELLANT'S COUNSEL]: Would you like us to interpret every word that is being said during this trial?

(Interpreter translates)

([Appellant] nods head.)

[APPELLANT'S COUNSEL]: He would like us to interpret every word that's being said.

THE COURT: Okay. We'll do that.

[COMMONWEALTH]: What about what's been said so far?

THE COURT: Call your next witness.

Id. at 21-23.[12]

Before we address the merits of Appellant's claim that the trial court violated his Sixth Amendment rights at the suppression hearing by failing to provide an interpreter during Lieutenant Palmer's testimony, we must first determine if Appellant properly preserved this issue for our review. As discussed supra, Rule 302(a) requires Appellant to raise the issue before the trial court in order preserve his claim for appeal. Pa.R.A.P. 302(a). "The reason for this rule has been enumerated as threefold: (1) appellate courts will not expend time and energy where no trial ruling has been made; (2) the trial court is more likely to reach a satisfactory result when the issue is properly presented; and (3) appellate courts may dispose of properly preserved issues more expeditiously." Commonwealth v. Myers, 403 A.2d 85, 87 (Pa. 1979). Even if the issue is of a constitutional nature, the party must raise the issue with the trial court in order to preserve the issue for

_____

[12] We can only assume Appellant's interpreter continued to interpret the testimony and hearing dialogue to Appellant for the remainder of the hearing as there is no indication in the notes of testimony that the interpreter was translating anything that was said. The trial court, however, did not begin the hearing anew or have Lieutenant Palmer's testimony read back and interpreted for Appellant to assure that he understood the testimony and to allow him the opportunity to discuss the testimony with his counsel.

appellate review.  Brown v. Philadelphia Tribune Co., 668 A.2d 159, 162 (Pa. Super. 1995), appeal denied, 675 A.2d 1241 (Pa. 1996), cert. denied, 519 U.S. 864 (1996); see also Commonwealth v. Kennedy, 959 A.2d 916, 922 (Pa. 2008) (stating claims regarding the failure to object and issue preservation best reserved for post-conviction relief), cert. denied, 556 U.S. 1258 (2009).

Here, our review of the notes of testimony from the suppression hearing reveals the Commonwealth first directed the trial court's attention to the fact that the interpreter, utilized by Appellant and his counsel, was not translating the testimony for Appellant simultaneous to it being offered by Lieutenant Palmer.[13]  N.T., 1/21/09, at 21.  Despite the Commonwealth having raised this concern with the trial court, Appellant's counsel did not join the Commonwealth's concern or lodge his own objection on behalf of Appellant.[14] Id.  Instead, Appellant's counsel explained that he retained his own interpreter to aid in counsel's communication with Appellant concerning the

_____

[13] It is apparent from the record that Appellant had a "limited ability to communicate in English" and, therefore, needed an interpreter "to help him communicate with counsel" and to understand the testimony and other court matters.  Trial Court Opinion, 8/26/16, at 6.

[14] Even in cases involving co-defendants, one defendant can waive an issue if that defendant fails to join in the co-defendant's objection.  Commonwealth v. Brown, 139 A.3d 208, 211 (Pa. Super. 2016), aff'd, 185 A.3d 316 (Pa. 2018).

recorded inculpatory statement.[15] Id. We find Appellant waived this issue for failure to object at the time the alleged error occurred, and therefore, we cannot address the merits of this claim.[16]

In his final issue, Appellant argues that the trial court erred in permitting the victim's attorney to testify about Appellant's prior acts of abuse of the victim and in admitting into evidence numerous records from the trial court's

_____

[15] When the trial court appropriated Appellant's interpreter, the interpreter's role at the hearing, according to Appellant's counsel, was to interpret a certain portion of the hearing for Appellant's and his counsel's benefit, not to translate every word of the hearing to Appellant. Also, the trial court did not appoint this interpreter as a matter of record. N.T., 1/21/09, at 3, 21-23. The interpreter, however, was qualified as a certified interpreter in accordance with 42 Pa.C.S.A. § 4412(a). See N.T., 9/1/06, at 3.

[16] In his brief, Appellant argues that trial counsel had a "disturbing practice of picking only select portions of critical proceedings to relay to his non-English speaking and illiterate client and providing then only 'summaries' for the interpreter to transmit to [Appellant]." Appellant's Brief at 35. As an example, Appellant cites to a portion of the preliminary hearing transcript. Id. A review of the preliminary hearing transcript demonstrates that an interpreter was provided to Appellant, the interpreter was certified and fluent in Appellant's language, and the interpreter was sworn in prior to the start of the hearing. N.T., 9/1/06, at 3. In as much as Appellant raises a claim that his trial counsel, at the preliminary hearing or suppression hearing, was ineffective, claims of ineffective assistance of counsel are reserved for collateral appeal and will not be addressed on the merits on direct appeal. Commonwealth v. Delgros, 183 A.3d 352, 361-362 (Pa. 2018) (stating that absent limited circumstances, not present in the case sub judice, claims of ineffectiveness of trial counsel are to be raised after the direct appeal process has concluded, that is to say, on collateral review).

family division, which demonstrated the prior bad acts.[17]  Appellant's Brief at

52-66; see also Appellant's Reply Brief at 22-28.

Appellate courts will only reverse a trial court's decision regarding the

admissibility of evidence upon a showing that the trial court abused its

discretion.  Commonwealth v. Golphin, 161 A.3d 1009, 1022 (Pa. Super.

2017), appeal denied, 170 A.3d 1051 (Pa. 2017).  "Abuse of discretion is not

merely an error of judgment, but rather where the judgment is manifestly

unreasonable or where the law is not applied or where the record shows that

the action is a result of partiality, prejudice, bias or ill will."  Golphin, 161

A.3d at 1022 (citation omitted).  "Admissibility depends on relevance and

probative value.  Evidence is relevant if it logically tends to establish a material

fact in the case, tends to make a fact at issue more or less probable or

supports a reasonable inference or presumption regarding a material fact."

Commonwealth v. Green, 162 A.3d 509, 516 (Pa. Super. 2017) (original

quotation marks omitted), quoting Commonwealth v. Drumheller, 808

A.2d 893, 904 (Pa. 2002).

> [E]vidence of prior bad acts or unrelated criminal activity is
> inadmissible to show that a defendant acted in conformity with
> those past acts or to show criminal propensity.  Pa.R.E. 404(b)(1).

---

[17] At the non-jury trial, the Commonwealth introduced the following exhibits:
a protection from abuse ("PFA") petition filed in 2002, N.T., 3/12/09, at 87, a
final order in the PFA action entered March 19, 2003, id. at 88-89, an amended
indirect criminal contempt complaint, id. at 92, a March 2004 custody order,
id. at 95, a petition for termination of support, id. at 97, a June 29, 2005
affidavit of service of the divorce complaint, id. at 99, and a July 12, 2006
notice of intent to finalize the divorce proceedings, id. at 100.  All of these
exhibits were admitted into evidence.  Id. at 105.

> However, evidence of prior bad acts may be admissible when offered to prove some other relevant fact, such as motive, opportunity, intent, preparation, plan, knowledge, identity, and absence of mistake or accident. Pa.R.E. 404(b)(2). In determining whether evidence of other prior bad acts is admissible, the trial court is obliged to balance the probative value of such evidence against its prejudicial impact.

Golphin, 161 A.3d at 1021 (citation omitted).[18] "Additionally, evidence of prior crimes and bad acts may be admitted where the acts were part of a chain or sequence of events that formed the history of the case and were part of its natural development." Id., quoting Commonwealth v. Powell, 956 A.2d 406 (Pa. 2008); see also Commonwealth v. Melendez-Rodriguez, 856 A.2d 1278 (Pa. Super. 2004) (stating evidence of the prior assaults admissible to establish appellant's motive show history and natural development of facts). This latter exception to Rule 404(b), commonly referred to as the res gestae exception, permits prior bad acts evidence "where it became part of

_____

[18] Pennsylvania Rule of Evidence 404(b), in pertinent part, states,

> Rule 404. Character Evidence; Crimes or Other Acts
>
> (b) Crimes, Wrongs or Other Acts.
>
> (1) Prohibited Uses. Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.
>
> (2) Permitted Uses. This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident. In a criminal case this evidence is admissible only if the probative value of the evidence outweighs its potential for unfair prejudice.

Pa.R.E. 404(b)(1) and (2).

the history of the case and formed part of the natural development of facts." Commonwealth v. Ivy, 146 A.3d 241, 251 (Pa. Super. 2016), citing Commonwealth v. Solano, 129 A.3d 1156 (Pa. 2015). "In order for evidence of prior bad acts to be admissible as evidence of motive, the prior bad acts must give sufficient ground to believe that the crime currently being considered grew out of or was in any way caused by the prior set of facts and circumstances." Commonwealth v. Knox, 142 A.3d 863, 866-867 (Pa. Super. 2016), citing Commonwealth v. Reid, 811 A.2d 530, 550 (Pa. 2002). "Our Supreme Court stated that PFA petitions are admissible and relevant to demonstrate the continual nature of abuse and to show the defendant's motive, malice, intent, and ill-will toward the victim." Ivy, 146 A.3d at 251, citing Drumheller, 808 A.2d at 905. If the evidence of prior bad acts is admitted, the defendant is entitled to a jury instruction that the evidence was admitted only for the limited purpose of proving, inter alia, motive and intent. Ivy, 146 A.3d at 251 (citation omitted). In non-jury trials, however, the trial court is presumed to know that prior bad acts evidence is admitted for limited purposes. Commonwealth v. Akhmedov, 216 A.3d 307, 320 (Pa. Super. 2019) (stating, the trial "court is imbued with the knowledge of the law that [it] would have given in a formal charge in a jury case" (citation and original quotation marks omitted)), appeal denied, 224 A.3d 364 (Pa. 2020).

Here, Appellant contends the trial court erred in permitting the victim's attorney, who represented the victim during prior family court matters, to

testify about circumstances contained in the PFA petition, the PFA final order, the indirect criminal contempt complaint, and the divorce, custody, and support proceedings. Appellant's Brief at 53. Appellant argues the victim's attorney, inter alia, had no first-hand knowledge of the allegations, the allegations dated back to 2002, the allegations were uncorroborated by other witnesses or physical evidence, and the allegations were never subject to cross-examination. Id. Appellant maintains that the testimony and the Commonwealth's exhibits did not qualify for admissibility under Pa.R.E. 404(b) because the unfair prejudice outweighed any probative value. Id. at 59. Appellant avers, inter alia, that the attorney's testimony and the Commonwealth's exhibits were inadmissible hearsay evidence and Rule 404(b) does not allow for the admission of otherwise inadmissible evidence. Id. at 54, 59-60. Appellant argues the trial court erred in determining that because the allegations contained in the exhibits were verified by or sworn to by the victim, the exhibits were admissible pursuant to Rule 404(b) even though, Appellant contends, the exhibits were hearsay and violated Appellant's Confrontation Clause[19] protections. Id. at 60-61.

In admitting the evidence and permitting the testimony pertaining to the prior family court matters, the trial court explained,

---

[19] "The Sixth Amendment to the United States Constitution guarantees that 'in all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him.' U.S. Const., amend. VI. This constitutional protection is known as the Confrontation Clause." Commonwealth v. Allshouse, 36 A.3d 163, 170 (Pa. 2012).

- 20 -

[Appellant] told numerous individuals that he was despondent as a result of the fact that he was going through a divorce proceeding and he did not have the opportunity to see his children. In addition, he was upset about the fact that the [PFA] proceeding prevented him from having access to his wife or children. This evidence was beneficial in establishing his state of mind and his specific intent to kill which the Commonwealth established by circumstantial evidence. As noted, it is very rare that someone will express their desire to commit a crime[,] while circumstantial evidence as to other matters may often provide the basis for determining someone's state of mind. The fact that [Appellant] was upset with these various [f]amily [d]ivision matters was important in establishing his specific intent to kill.

Trial Court Opinion, 6/6/19, at 11-12. The trial court viewed the testimony given by the victim's attorney and the Commonwealth's exhibits as demonstrating Appellant's intent to harm the victim and possibly kill her. N.T., 3/13/09, at 235 (referring to two PFAs predicated upon Appellant's intent to harm, and possibly kill, the victim). In finding Appellant guilty of first-degree murder, the trial court stated,

[O]nce you caused the death of your wife you showed no remorse. None. You treated her like you would have treated an animal. You didn't even look to see if, in fact, the victim was your wife because you knew that it was your wife and you knew that it was the person that you intended to kill. You knew that it was the person that you had gone out looking for and you knew it by virtue of the fact that you went up that street and made the left and then made another left turn onto the road going across the sidewalk and going into the grassy area, hitting her and driving her into that house effectively severing her body in half.

Id. at 237.

A review of the record demonstrates that the attorney's testimony and the Commonwealth's exhibits pertaining to the PFA and family law matters were properly admitted under Rule 404(b), and we find no abuse of discretion

- 21 -

on the part of the trial court. The trial court, as the ultimate fact-finder in Appellant's non-jury trial, considered this evidence for the sole purpose of establishing the history of the case, and this evidence formed part of the natural development of facts demonstrating the continual nature of Appellant's abuse of the victim and his intent to harm and possibly kill her. The trial court admitted this evidence solely to explain the course of conduct, and we find no merit to Appellant's argument that the rule against hearsay or the Confrontation Clause bar this evidence from being admitted for the limited purpose for which the trial court considered it. Commonwealth v. Dargan, 897 A.2d 496, 500 (Pa. Super. 2006) (holding that evidence offered to explain course of conduct is not excluded by hearsay rule nor barred by Confrontation Clause), appeal denied, 916 A.2d 1101 (Pa. 2007).

Judgment of sentence affirmed. Appellant's motion for post-submission communications pursuant to Rule 2501(b) granted.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/11/2020

- 22 -