J-A03020-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| DENNIS LEE HASSINGER | : | |
| | : | |
| Appellant | : | No. 168 MDA 2020 |

Appeal from the Judgment of Sentence Entered November 21, 2019,
in the Court of Common Pleas of Centre County,
Criminal Division at No(s): CP-14-CR-0001801-2018.

BEFORE: LAZARUS, J., KUNSELMAN, J., and MURRAY, J.

MEMORANDUM BY KUNSELMAN, J.:                    **FILED JULY 09, 2021**

Dennis Lee Hassinger appeals from the judgment of sentence imposed following his conviction of three counts of arson.[1] We affirm.

The relevant factual and procedural history underlying this appeal can be summarized as follows. In the early morning hours of October 30, 2018, the Centre County courthouse and adjacent sheriff's department sustained fire damage to their roofs. During the investigation, police asked the sheriff's department to review security surveillance footage from cameras around the courthouse. The surveillance footage revealed an individual dressed in boots, camouflage shorts, and a dark hooded sweatshirt walking around the courthouse and sheriff's department. The footage also showed the same

---

[1] *See* 18 Pa.C.S.A. §§ (a.2), (c)(1).

individual throwing burning incendiary devices (*i.e.*, Molotov cocktails) onto the roofs of the courthouse and the sheriff's department. Three police officers and three sheriff deputies recognized Hassinger as the individual in the footage.

Police then obtained and executed a search warrant where Hassinger was staying and recovered clothing that matched what was seen in the video. The police also recovered a lighter and yellow grocery bags similar to the ones burnt onto the concrete on top of the courthouse and found on the pavement across the street from the courthouse. Video taken two days earlier from the Dollar Store showed Hassinger purchasing a two-liter bottle of soda, and requesting plastic bags, which are yellow. Police also recovered Hassinger's cell phone and Facebook account, which revealed texts and posts indicating an extreme animosity toward the Centre County court system and law enforcement.

Most of the Facebook posts were made in late January 2018, in the days leading up to and during Hassinger's trial in the Centre County courthouse on unrelated charges stemming from a domestic incident which occurred in 2017.[2] In one of those posts, Hassinger referenced a 1996 criminal case against him, and claimed "[t]wo lying ass Pennsylvania State Police troopers Said i attacked them in my own home." N.T., 9/24/19 at 125-26. In other

---

[2] One of the Facebook posts was made on September 27, 2017, the day of Hassinger's preliminary hearing regarding those charges.

Facebook posts made around the same time, Hassinger excoriated "lying" police, whom he variously referred to as "F--king coppers," "THEE FUZZ," "f—kin pussies," "f--kn fuz pigs popos," and "f--kn muthhaf--kn sorry ass dirty cocksuckers calling them selfs police officers of the law." *Id*. at 116-18, 129-30. Hassinger also condemned the Centre County court system in his Facebook posts by claiming "F—kin Centre County is soso like beyond corrupted," is an "unfair justice system," and is "NUTTIN BUTT A BUNCH OF F—KN CRIMINALS" and "POWER TRIPPIN WHORES HOES" and "PRICKS." *Id*. at 116-18, 122. Hassinger also claimed that "THIS LYING COUNTY MADE MEE A WRONGFUL CONVICTED FELON W/OUT MEE DOING ANYTHING TO DESERVE IT." *Id*. at 124. Hassinger condemned these entities to "go f—k ur self literally and go @ too f-kn hell n burn." *Id*. at 118.

Hassinger indicated in another Facebook post that he had received a letter advising him that he was "a convicted felon 2 twice over," and claimed that this was an "injustice for anybody to be taken advantage of by the justice system," and stated that he "was not giving up without a fight" and would "[f]ight fire w/fire." *Id*. at 123. Hassinger additionally claimed that Centre County was "F—kn evil bullsh-t" and stated "GodDamn u to HellFireAndBrimstone Lake of fire Ur firey prison awaits youso f—kn burn where u don't get use to it thee flames of Hell were you wish for death." *Id*. at 116-18.

In a text message sent to his mother approximately one week before the arson, Hassinger complained about "f—kn corruption w/in a f—kn decaying law systems" and "those f—kn muthhaf—kn sorry ass dirty cocksuckers calling them selfs police officers." N.T., 9/24/20, at 129-30.

Police arrested Hassinger and charged him with multiple counts of arson and related offenses. When Hassinger was asked why he committed the arson, he initially stated "I don't know," but later denied any involvement. The Commonwealth developed a theory that Hassinger, who had an extensive criminal record, harbored extreme animosity toward the courts and law enforcement which provided a motive for him to set fire to the courthouse and sheriff's department. On this basis, the Commonwealth sought to introduce, *inter alia*, a 1996 conviction for terroristic threats, and a 2005 conviction for burglary, assault, harassment, and trespass.[3] Both Hassinger and the Commonwealth filed motions *in limine* to preclude/permit the introduction of (1) Hassinger's criminal record; and (2) lay opinion testimony from law enforcement personnel identifying Hassinger in surveillance footage. Following a hearing, the trial court determined that the prior convictions were admissible on the basis that they showed motive and/or intent, and their

---

[3] The parties also sought to preclude/admit a 2018 conviction and a 2017 Protection From Abuse ("PFA") order issued against Hassinger in 2017. Hassinger does not challenge the admission of his 2018 conviction or evidence related to the 2017 PFA order entered against him except to the extent that the jury could determine his parole status from those documents.

- 4 -

probative value outweighed any prejudicial impact. The court also ruled that law enforcement officers could provide lay opinion identification testimony. On this basis, it granted the Commonwealth's motions *in limine* and denied Hassinger's motions *in limine*.

The matter proceeded to a jury trial in September 2019. During trial, the Commonwealth presented the testimony of six law enforcement officers, each of whom identified Hassinger as the individual in the surveillance video. The Commonwealth also introduced Hassinger's prior convictions. In relation to the 1996 conviction for terroristic threats, the Commonwealth was permitted to introduce the testimony of Trooper Warren Sasserman, who explained that he and Corporal Daniel Hawk of the Pennsylvania State Police were dispatched to serve a mental health warrant on Hassinger that had been issued based on information supplied by Hassinger's mother. When they encountered Hassinger and informed him of the warrant, Hassinger stated, "I am not going anywhere with you fucking pigs, I will kill the first one that touches me, you're going to call more fucking cops because it's going to take more than two of you." N.T., 9/24/19, at 21-25. Hassinger attempted to evade Trooper Sasserman and Corporal Hawk, and when Corporal Hawk blocked Hassinger's exit, Hassinger starting swinging at them and a physical altercation ensued. *Id*. at 25. Trooper Sasserman and Corporal Hawk wrestled Hassinger to the ground, and were eventually able to immobilize and handcuff him, although Hassinger continued to kick and attempt to break free.

*Id*.  As they were escorting Hassinger from the residence to their vehicle, Hassinger stated to them, "you better watch out because I am going to Pearl Harbor your ass."  *Id*. at 25-26.  Hassinger further threatened that he would "get even."  *Id*. at 26.  Trooper Sasserman suffered a laceration to his face and swelling.  *Id*. at 36.

In relation to the 2005 conviction for burglary, assault, harassment, and trespass, the Commonwealth introduced the bill of information, the complaint, and evidence that Hassinger plead guilty to the above charges.  *See* N.T., 9/24/19, at 53-56.  The Commonwealth also introduced the sentencing order. *Id*. at 56-58.

At the conclusion of trial, the jury found Hassinger guilty of three counts of arson.  The trial court ordered the preparation of a presentence investigation report ("PSI").  On November 21, 2019, the trial court sentenced Hassinger to an aggregate prison term of ten to twenty years.  Hassinger filed post-sentences motions, which the trial court denied.  Both Hassinger and the trial court complied with Pa.R.A.P. 1925.

Hassinger raises the following issues for our review:

1. Did the trial court abuse its discretion and violate [Hassinger's] due process rights to a fair trial when it allowed the Commonwealth to (1) introduce evidence of a conviction from 1996 as well testimony regarding the circumstances of said conviction, (2) introduce evidence of a conviction from 2005, and (3) introduce evidence that [Hassinger] was on parole supervision at the time of these offenses?

2. Did the trial court abuse its discretion and violate [Hassinger's] due process rights to a fair trial when it allowed six law

- 6 -

enforcement witnesses to testify that in surveillance video footage, the individual depicted was [Hassinger]?

3. Did the trial court abuse its discretion when it sentenced [Hassinger] far in excess of the guidelines for these crimes?

Hassinger's Brief at 5.

In his first issue, Hassinger challenges the trial court's ruling permitting the admission into evidence of his 1996 and 2005 convictions. Our standard of review concerning the admissibility of evidence at trial is well-settled:

> The admission of evidence is solely within the discretion of the trial court, and a trial court's evidentiary rulings will be reversed on appeal only upon an abuse of that discretion. An abuse of discretion will not be found based on a mere error of judgment, but rather occurs where the court has reached a conclusion that overrides or misapplies the law, or where the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will.

*Commonwealth v. Woodard*, 129 A.3d 480, 494 (Pa. 2015).

Under our Rules of Evidence, "[r]elevance is the threshold for admissibility of evidence." *Commonwealth v. Tyson*, 119 A.3d 353, 358 (Pa. Super. 2015); *see also* Pa.R.E. 402. "Evidence is relevant if it has any tendency to make a fact more or less probable than it would be without the evidence[,] and the fact is of consequence in determining the action." Pa.R.E. 401; *see also Tyson*, 119 A.3d at 358 (stating that "[e]vidence is relevant if it logically tends to establish a material fact in the case, tends to make a fact at issue more or less probable or supports a reasonable inference or presumption regarding a material fact."). "Evidence that is not relevant is not admissible." Pa.R.E. 402. In addition, "[t]he court may exclude relevant

evidence if its probative value is outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Pa.R.E. 403.

Rule 404(b) prohibits the admission of prior crimes, wrongs, or acts "to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Pa.R.E. 404(b)(1). However, such evidence may be admissible for other purposes, "such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Pa.R.E. 404(b)(2). "In order for evidence of prior bad acts to be admissible as evidence of motive, the prior bad acts must give sufficient ground to believe that the crime currently being considered grew out of or was in any way caused by the prior set of facts and circumstances." *Commonwealth v. Knox*, 142 A.3d 863, 866-67 (Pa. Super. 2016). Identity as to the charged crime may be proven with evidence of another crime where the separate crimes share a method so distinctive and circumstances so nearly identical as to constitute the virtual signature of the defendant. *See Commonwealth v. Weakley*, 972 A.2d 1182, 1189 (Pa. Super. 2009).

Additionally, courts will allow evidence of prior bad acts under the *res gestae* exception, which applies when the distinct crime or bad act was part of a chain or sequence of events which formed the history of the case and was

part of its natural development. *See Commonwealth v. Drumheller*, 808 A.2d 893, 905 (Pa. 2002); *see also Commonwealth v. Hairston*, 84 A.3d 657, 665 (Pa. 2014) (explaining that the *res gestae* exception permits the admission of evidence of other crimes or bad acts to tell "the complete story"). In a criminal case, prior bad acts evidence is admissible only if the probative value of the evidence outweighs its potential for unfair prejudice. Pa.R.E. 404(b)(2).

Hassinger argues that the Commonwealth failed to show that the arson was logically connected to his 1996 convictions for resisting arrest and terroristic threats or his 2005 convictions for burglary, assault, harassment, and trespass. He maintains that the prior convictions involve completely different crimes, occurred remotely in time (13 and 22 years prior to the arson), and involved different victims.

Hassinger also challenges the trial court's ruling that the prior convictions were admissible to prove identity because he argued at trial that someone else committed the arson.[4] Hassinger claims that to be admissible to prove identity, the trial court was required to consider five factors (1) the manner in which the crimes were committed; (2) the weapons used; (3) the ostensible purpose of the crime; (4) the location; and (5) the type of victims. *See* Hassinger's Brief at 35 (citing *Weakley*, 972 A.2d at 1189). Hassinger

_____

[4] The trial court offered this alternate theory for admission of the 1996 and 2005 convictions in its Pa.R.A.P. 1925(a) opinion.

argues that none of the factors from his prior convictions are the same as the factors attendant to the arson charges in question.

Hassinger additionally claims that the trial court abused its discretion in relying on the *res gestae* exception as an alternate basis to permit admission of the 1996 and 2005 convictions. Hassinger maintains that under the *res gestae* exception, other crimes evidence is admissible to tell the complete story of the crime on trial "by proving its immediate context of happenings near in time and place." **See** Hassinger's Brief at 36 (citing **Commonwealth v. Lark**, 543 A.2d 491 (1988)). According to Hassinger, the *res gestae* exception does not apply because his 1996 and 2005 convictions do not involve happenings near in time and place and do not involve the immediate context of the current crime.

Hassinger further maintains that, even if the 1996 and 2005 convictions were admissible under Rule 404(b), they should have been excluded from evidence because their probative value was outweighed by unfair prejudice. He asserts that the Commonwealth introduced not just the 1996 and 2005 convictions, but also documents indicating the sentences that Hassinger received for those crimes. Thus, Hassinger argues, the jury was able to infer not only that he had a criminal record, but also that he had been incarcerated for these offenses.

Hassinger further asserts that in relation to the 1996 conviction, the trial court should not have permitted testimony from Trooper Sasserman that

Hassinger threatened to "Pearl Harbor" him, or that Hassinger was taken into custody on a mental health warrant which is issued when someone is threatening to harm himself or others. Hassinger claims that the jury was able to infer from this testimony not only that he suffers from some type of mental illness, but that this illness caused him to threaten harm to others or himself. Hassinger additionally claims that the trooper's testimony suggested to the jury that Hassinger is a man of violent character with significant mental health issues that made him a danger to society. Hassinger submits that his Facebook posts adequately established his mindset toward law enforcement, such the prior convictions were not probative and their admission was unnecessary.

Finally, Hassinger claims that these errors were not harmless because the uncontradicted evidence of guilt (clothes, lighter, yellow plastic bags) was not overwhelming, and the erroneously admitted convictions were not cumulative of other evidence.

The trial court addressed Hassinger's first issue and concluded that it lacked merit. It reasoned:

> As stated at length, evidence regarding prior bad acts or crimes may be admissible for the purpose of proving motive and intent. The evidence in the form of officer testimony regarding a twenty (20) year old case and evidence of [Hassinger's] prior record was necessary under the *res gestae* rationale and within this court's discretion upon the proper balancing between probative value and potential prejudicial effect. Importantly, the evidence was deemed necessary to support the Commonwealth's case and to rebut the defense in arguing the crimes were committed by someone other than [Hassinger], and in order to present the

- 11 -

narrative and history of the case clearly and accurately to the jury. The testimony admitted offered insight primarily into [Hassinger's] mindset toward police enforcement and the courts, and the reason for why the charged offenses were likely attributed by [Hassinger] to his history with these institutions. Additionally, the Commonwealth correctly pointed out in its argument for admissibility the limited amount of evidence sought to be introduced in comparison to the amount of similar evidence actually available.

Similarly, evidence of [Hassinger's] prior record, including what he believed to be a wrongful felony conviction, was the only means of providing the jury with a complete story, and the likelihood of unfair prejudice remained minimal compared to the probative value. Importantly, it is [Hassinger's] own recent social media posts and text messages which make reference to these specific incidences, including the prior "wrongful" felony conviction. While this court was exceedingly careful in limiting what was ultimately allowed to be introduced into evidence, it is also important to note [Hassinger's] role in making such evidence relevant through his social media accounts and text messaging. As such, included within the balancing of the appropriate factors regarding any possible prejudice, [Hassinger's] own actions in making such evidence relevant so close in time to the crimes committed played a large part in the court's decision. Without the introduction of such evidence, the jury would be left without any context from which to determine [Hassinger's] state of mind and motive. . . . Even assuming the evidence was prejudicial to [Hassinger], including that of identity . . ., it was certainly not unduly prejudicial.

Trial Court Opinion, 3/17/20, at 4-5 (footnote, internal quotation marks, and unnecessary capitalization omitted).

We discern no abuse of discretion by the trial court in admitting Hassinger's convictions from 1996 and 2005 as evidence of motive, intent,

and under the *res gestae* exception.[5] The convictions were not admitted for the purpose of showing that Hassinger had a propensity for or acted in conformance with prior criminal conduct, but rather to show that he harbored extreme animosity towards the Centre County court system and law enforcement personnel stemming from his belief that he was wrongly convicted of his prior crimes due to a corrupt court system and dishonest law enforcement personnel.

While Hassinger's 1996 and 2005 convictions occurred thirteen and twenty-two years prior to the arson, the mere fact that they were remote in time does not require their exclusion from evidence. Our Supreme Court has held that although "testimony may involve events so remote from the date of the crime that it has no probative value . . . no rigid rule can be formulated for determining when such evidence is no longer relevant." *Drumheller*, 808 A.2d at 905 (quoting *Commonwealth v. Ulatoski*, 371 A.2d 186, 191 (Pa. 1976)). Instead, the remoteness of prior bad acts "affects the weight of that

---

[5] While the trial court also found the convictions admissible under Rule 404(b)(2) as evidence of identity, the identity exception requires proof that the prior bad acts and the crime on trial share "an almost uncanny similarity in all the details." *See Commonwealth v. Johnson*, 160 A.3d 127, 143 (Pa. 2017). Here, we agree with Hassinger that the crimes on trial (*i.e.*, arson) bear no similarity to the crimes for which Hassinger was convicted in 1996 and 2005. Nevertheless, we may affirm the trial court's admissibility ruling on any valid basis appearing of record, such the *res gestae* exception. *See Commonwealth v. Moore*, 937 A.2d 1062, 1073 (Pa. 2007)

evidence and not its admissibility." **See id**. (quoting **Commonwealth v. Petrakovich**, 329 A.2d 844, 850 (Pa. 1974)).

In the instant matter, Hassinger made his 1996 and 2005 convictions relevant through posts he made on his Facebook account nine months prior to the arson. In those posts, Hassinger repeatedly indicated his belief that he was wrongly convicted of prior crimes, that law enforcement personnel were liars, and the Centre County court system was corrupt. Hassinger also made repeated references in his Facebook posts to fighting these entities and to condemning them in various incendiary manners. Given this factual sequence, the 1996 and 2005 convictions were clearly part of a chain or sequence of events which formed the history of the case and were necessary to tell the complete story. **See Drumheller**, 808 A.2d at 905; **see also Commonwealth v. Lilliock**, 740 A.2d 237, 245 (Pa. Super. 1999) (finding no ineffectiveness where counsel failed to object to the trial admission of a PFA order issued twelve years prior to a subsequent prosecution for arson where both instances of conduct involved the same victim and the order was relevant to defendant's ill will, malice, or motive); **Commonwealth. v. Cosby**, 224 A.2d 810 (Pa. Super. 2007) (upholding admission of Rule 404(b) testimony relating to sexual assault fifteen years earlier to show common scheme and absence of mistake); **Commonwealth v. Tyson**, 119 A.3d 353, 360 (Pa. Super. 2015) (reversing denial of Commonwealth motion seeking to

- 14 -

admit of defendant's rape conviction from twelve years earlier to show common scheme).

While Hassinger would have preferred that the jury not hear about his prior convictions, the trial court is not required to sanitize the trial to eliminate all unpleasant facts from the jury's consideration where those facts are relevant to the issues at hand and form part of the history and natural development of the events and offenses for which the defendant is charged. *See Commonwealth v. Lark*, 543 A.2d 491, 501 (1988). Given the clear relevance of the prior convictions to Hassinger's mindset, and Hassinger's history of verbal and physical conflicts with law enforcement personnel, he has not demonstrated that the probative value of the prior convictions outweighs the potential for unfair prejudice. *See* Pa.R.E. 404(b)(2). Nor has he demonstrated that, in making its ruling, the trial court overrode or misapplied the law, or that its ruling is manifestly unreasonable or the result of partiality, prejudice, bias or ill-will. *See Woodard*, 129 A.3d at 494.

Moreover, Hassinger did not contest the admission of his Facebook posts which included numerous accusations and condemnations against law enforcement and the Centre County court system, as well as references to his prior convictions and adverse encounters with law enforcement. Thus, even if the admission of the 1996 and 2005 convictions was erroneous, such admission was harmless because the convictions were merely cumulative of other properly admitted and unchallenged evidence.

Finally, the trial court provided a limiting instruction to the jury advising them that they could consider the prior convictions solely for the purpose of establishing motive. **See** N.T., 9/25/19, at 55-56. Importantly, the law presumes that the jury will follow the instructions of the court. **See Commonwealth v. Brown**, 567 Pa. 272, 786 A.2d 961, 971 (Pa. 2001). Thus, we presume that the jury did not make any improper inferences from the 1996 and 2005 convictions. **See Commonwealth v. O'Hannon**, 732 A.2d 1193, 1196 (Pa. 1999) (holding that, absent evidence to the contrary, the jury is presumed to have followed the trial court's instructions). Accordingly, Hassinger's challenge to the admission of the 1996 and 2005 convictions warrants no relief.[6]

---

[6] Hassinger additionally argues that the trial court erred by permitting the Commonwealth to present an unredacted 2018 sentencing order which "more or less informed [the jury] that [he] was on parole during the time he allegedly set fire to the courthouse." Hassinger's Brief at 43. Importantly, when an appellant is directed to file a concise statement of matters to be raised on appeal pursuant to Pa.R.A.P. 1925(b), the statement must be specific enough for the trial court to identify and address each issue the appellant wishes to raise on appeal. **See In re A.B.**, 63 A.3d 345, 350 (Pa. Super. 2013). Here, in Hassinger's concise statement, he claimed only that the trial court "erred in allowing the Commonwealth to introduce [his] prior record." Concise Statement, 2/12/20, at 1. Hassinger's concise statement made no reference to the disclosure of his parole status at the time of the arson. Not surprisingly, the trial court did not address Hassinger's challenge to the disclosure of his parole status in its Pa.R.A.P. 1925(a) opinion. **See Commonwealth v. Dowling**, 778 A.2d 683, 686 (Pa. Super. 2001) (holding that when a court has to guess what issues an appellant is appealing, that is not enough for meaningful review). Thus, due to Hassinger's vaguely worded concise statement, he failed to preserve this issue for our review.

In his second issue, Hassinger contends that the trial court abused its discretion by permitting six law enforcement personnel to provide lay opinion testimony that Hassinger was the individual depicted in the surveillance video. We employ the same standard of review regarding the admission of evidence as discussed above.

Additionally, Pennsylvania Rule of Evidence 701 states that in cases where a witness is not testifying as an expert, his or her opinion testimony must be limited to what is: "(a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 701." Pa.R.E. 701. "Generally, lay witnesses may express personal opinions related to their observations on a range of subject areas based on their personal experiences that are helpful to the factfinder." *Commonwealth v. Berry*, 172 A.3d 1, 3-4 (Pa. Super. 2017) (citations omitted).

The trial court considered Hassinger's second issue and concluded that it lacked merit. The court reasoned:

> [Hassinger] . . . contests the admissibility of lay witness opinion testimony used to identify [him] on Centre County Courthouse video surveillance. Our Superior Court has on other occasions allowed the introduction of such testimony when it is rationally based upon perception and helpful in the determination of a fact in issue. In the case *sub judice*, identity was a key fact in issue, and the testimony provided regarding identity was clearly based upon the reliable perception of the witnesses. Specifically, the witnesses were exceedingly familiar with [Hassinger] due to the long history of [Hassinger's] interactions with the court system

- 17 -

and law enforcement, including with the witnesses. Due to the familiarity of the witnesses with [Hassinger] and certain of his distinct characteristics including that of unique gait, distinctive facial profile and hairline, and its usefulness in assisting the jury in its determination of identity, the court in its discretion properly found such evidence admissible for this purpose.

Trial Court Opinion, 3/17/20, at 2-3 (unnecessary capitalization omitted).

We discern no abuse of discretion by the trial court in determining that the lay opinion testimony provided by law enforcement personnel was admissible. Under appropriate circumstances, this Court has upheld decisions to allow law enforcement personnel to provide lay opinion testimony. *See* *Commonwealth v. Palmer*, 192 A.3d 85, 101 (Pa. Super. 2018) (holding that the admission of a detective's lay opinion testimony identifying the appellant as the shooter in surveillance videos was proper because it was based upon his perceptions and was helpful in allowing the jury to reach a clear understanding); *see also Commonwealth v. Spencer*, 639 A.2d 820 (Pa. Super. 1994) (holding the witness's opinion that the gait of the robber and the gait of the appellant were similar was properly admitted under Pa.R.E. 701); *Commonwealth v. Teagle*, 224 A.3d 796 (Pa. Super. 2019) (unpublished memorandum) (holding that lay opinion identification testimony, "is more likely to be admissible where the surveillance photograph is of poor or grainy quality, or where it shows only a partial view of the subject."[7]

_____

[7] While *Teagle* is not controlling because it is a non-published memorandum, it nevertheless provides persuasive authority to this Court because it was filed
*(Footnote Continued Next Page)*

- 18 -

Here, the law enforcement officers who testified were exceedingly familiar with Hassinger due to their numerous interactions with him over the years, and could testify to his distinctive gait, facial features, and attire choices based on their personal acquaintance and interactions with him. Sheriff Bryan Sampsel had known Hassinger for thirty-five years (since middle school) and recognized Hassinger in the surveillance video based on his acquaintance with Hassinger and Hassinger's physical features and clothing. *See* N.T., 9/23/19, at 169-72 (noting Hassinger's "crazy hair" which "stands up" and his "high forehead"). Detective William Witmer, who arrested Hassinger in 2017 and had seen Hassinger on numerous occasions over the ten years prior to the arson, recognized Hassinger in the surveillance video because of his distinctive clothing (boots and shorts), high forehead profile, distinctive stance, and distinctive gait. *Id*. at 77. Officer Robert Holt immediately recognized Hassinger in the video because they had gone to school together and had known each other for over thirty years. *Id*. at 197-200. Deputy Levi Knoffsinger, who had seen Hassinger numerous times around town and at the courthouse security checkpoint prior to the arson, immediately recognized Hassinger in the video because of his distinctive clothing (camouflage shorts, brown boots, and black or grey sweatshirt),

after May 1, 2019. *See* Pa.R.A.P. 126(b) (providing that unpublished non-precedential memorandum decisions of the Superior Court filed after May 1, 2019 may be cited for their persuasive value).

appearance, and distinctive walk. *Id*. at 217-21. Deputy Jordan Booher had also seen Hassinger around town numerous times before the arson incident and recognized him in the video due to his distinctive clothing, physical appearance, and manner of walking. *Id*. at 225-27. Finally, Officer Robert Igoe, who had known Hassinger for approximately twenty years through police interaction and seeing him around town, recognized Hassinger in a still image taken from the surveillance video due to Hassinger's clothing, hair, and beard. *Id*. at 240-42. Thus, the lay opinion testimony provided by law enforcement witnesses was based on personal perceptions and was helpful to the jury to reach a clear understanding of the identity of the individual in the surveillance video. *See Palmer*, 192 A.3d at 101. Additionally, the surveillance video system was old and presented various problems. *See* N.T., 9/23/19, at 167-68 (noting that the surveillance system was from 2006 to 2008).

Moreover, the trial court provided a cautionary instruction to the jury informing them that the testimony of a law enforcement officer or police officer should not be treated as any more or less authoritative than the testimony of any other witness, and that the jury should apply the same standards when considering such testimony as they would any other witness. *See* N.T. 9/25/19 at 52. For these reasons, Hassinger's second issue entitles him to no relief.

Although, Hassinger also challenges in this appeal the ***number*** of law enforcement witnesses who provided lay opinion testimony, he never raised

this particular claim before the trial court either at trial, in his post-sentence motion, or in his concise statement. Instead, he argued only generally that the trial court should not have permitted lay opinion testimony by law enforcement personnel. Because Hassinger never challenged the number of law enforcement witnesses (*i.e.*, as cumulative or prejudicial) in the trial court, that particular claim is waived. ***See*** Pa.R.A.P. 302 (providing that issues not raised in the trial court are waived and cannot be raised for the first time on appeal).

In his final issue, Hassinger challenges the discretionary aspects of his sentence. "Challenges to the discretionary aspects of sentencing do not entitle an appellant to review as of right." ***Commonwealth v. Moury***, 992 A.2d 162, 170 (Pa. Super. 2010). Prior to reaching the merits of a discretionary sentencing issue:

> [this Court conducts] a four[-]part analysis to determine: (1) whether appellant has filed a timely notice of appeal, ***see*** Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, ***see*** Pa.R.Crim.P. [720]; (3) whether appellant's brief has a fatal defect, [***see***] Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, [***see***] 42 Pa.C.S.A. § 9781(b).

***Moury***, 992 A.2d at 170 (citation omitted).

When an appellant challenges the discretionary aspects of his sentence, we must consider his brief on this issue as a petition for permission to appeal. ***Commonwealth v. Yanoff***, 690 A.2d 260, 267 (Pa. Super. 1997); ***see also***

***Commonwealth v. Tuladziecki***, 522 A.2d 17, 18 (Pa. 1987); 42 Pa.C.S.A. § 9781(b).

In the instant case, Hassinger filed a timely notice of appeal, preserved his claims in a timely post-sentence motion, and included in his appellate brief a separate Rule 2119(f) statement. As such, he is in technical compliance with the requirements to challenge the discretionary aspects of his sentence. ***See Commonwealth v. Rhoades***, 8 A.3d 912, 916 (Pa. Super. 2010). Thus, we will proceed to determine whether Hassinger has presented a substantial question for our review.

In his Rule 2119(f) statement, Hassinger claims that his sentence is unreasonable and excessive. According to Hassinger, the standard range sentence for each arson offense was between fifteen and twenty-four months, and the aggravated range for each arson offense was between twenty-seven and thirty months. Hassinger claims that, by imposing a prison sentence of sixty to one hundred and twenty months on each count, the trial court abused its discretion because it imposed the maximum permissible sentence and ran the sentences consecutively. Hassinger additionally argues that the trial court failed to adequately articulate why the imposition of the statutory maximum on each count was necessary in this case. Hassinger maintains that the reasons offered by the trial court at sentencing lacked sufficient support in the record or were otherwise improper. Hassinger further asserts that the trial

court failed to consider all necessary factors when issuing its excessive sentence.

A bald claim of excessiveness due to the consecutive nature of a sentence will not raise a substantial question. *See Commonwealth v. Diehl*, 140 A.3d 34, 45, (Pa. Super. 2016). However, a claim that a sentence is excessive, paired with a claim that the trial court failed to consider mitigating factors, presents a substantial question. *See Commonwealth v. Johnson*, 125 A.3d 822 (Pa. Super. 2015) (excessive sentence claim, in conjunction with assertion that sentencing court failed to consider mitigating factors, raises substantial question). Further, a claim that a sentence was unreasonable because it was outside the sentencing guidelines raises a substantial question. *See Commonwealth v. Lawrence*, 960 A.2d 473, 478 (Pa. Super. 2008). Finally, a claim that the sentencing court imposed a sentence outside the standard sentencing guidelines without stating adequate reasons on the record presents a substantial question. *See Commonwealth v. Antidormi*, 84 A.3d 736, 759 (Pa. Super. 2014). Thus, Hassinger has raised a substantial question for our review.

In reviewing Hassinger's discretionary sentencing claim, we are mindful of the following principles.

> Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied

- 23 -

the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

*Commonwealth v. Garcia-Rivera*, 983 A.2d 777, 780 (Pa. Super. 2009) *(citation omitted).*

Where, as here, the trial court imposes a sentence of total confinement, the sentence must be consistent with the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant. *See* 42 Pa.C.S.A. § 9721(b). Although the trial court is required to consider the sentencing guidelines, it is not required to follow them. *Id*. However, if the trial court intends to sentence a defendant outside the guidelines, it must indicate on the record its awareness of the sentencing guidelines and provide a contemporaneous written statement of the reason or reasons for the deviation from the guidelines. *See id*., *see also Commonwealth v. Davis*, 737 A.2d 792, 798 (Pa. 1999) (requiring a statement of record as to the factual basis and specific reasons which compelled him to deviate from the guideline range).

Hassinger asserts that the trial court imposed an unreasonable sentence by imposing consecutive sentences above the aggravated range without providing adequate reasons. Hassinger contends that the trial court failed to give adequate consideration to his mental health issues, which include possible bi-polar disorder, depression, personality disorder, psychotic

- 24 -

episodes, and frequent psychiatric hospitalizations. Hassinger claims that his mental health issues were on full display during the trial with his irrational ramblings and incoherence. Hassinger argues that his mental health issues were never fully addressed by the trial court when fashioning his sentence. According to Hassinger, the trial court focused solely on his lack of remorse and lengthy criminal record.

Hassinger additionally argues that the trial court failed to properly respect and consider the sentencing guidelines when imposing sentence. He claims that the trial court failed to adequately consider that Hassinger attempted to set fire to the courthouse and Sheriff's office at a time when he knew that no one would be in those buildings. While Hassinger acknowledges the trial court's concern for the residential properties surrounding the courthouse which might have caught fire and caused harm to the residents therein, he asserts that this risk was already taken into consideration for the guidelines and offense gravity scores applicable to arson.

Finally, Hassinger argues that the trial court failed to consider his rehabilitative needs. He points to an NPR interview in support of his claim that confinement to state prisons causes mental illness to worsen resulting in greater recidivism and threats to public safety.[8]

---

[8] In the argument section of his brief, Hassinger claims that the trial court considered various impermissible factors when fashioning Hassinger's sentence. However, as Hassinger failed to raise this issue in the Rule 2119(f) statement, we decline to address it.

Notably, at the sentencing hearing, the trial court explained the basis for imposing its sentence as follows:

[T]he court has relied on the presentence memos submitted by both defense counsel and the Commonwealth, has heard arguments from defense counsel and [the] Commonwealth today, has heard statements made by [Hassinger] today. The court has reviewed the PSI, has considered [Hassinger's] character, education, and his circumstances and has looked to the guidelines of the sentencing code.

[T]he Court must consider the following when it fashions a sentence for a defendant. It has to look at one, the protection of the public; two, the gravity of the offense as it relates to the victim and the community; and three, to the rehabilitative needs of the [d]efendant.

As to the rehabilitative needs of [Hassinger], the court finds that [Hassinger] has shown no remorse or acceptance or responsibility for his actions. A review of the PSI and the prior record contained within that PSI shows that [Hassinger] has a long misdemeanor record of approximately 11 misdemeanors as well as with these two new convictions, three felonies, and that for over 30 years involved in the criminal justice system has failed or refused any form of rehabilitation. In fact, as we sit here today, as evidence[d] by the convictions for arson, the behavior's only escalating. And the court will make a note that [Hassinger] was even on parole at the time of the arson offense.

As to the protection of the public, the gravity of the offense as it relates to the community, through [Hassinger's] criminal history, interactions with the court, and current convictions, he has shown an extreme level of unpredictableness, impulsive[ness], and violent behavior and severe animosity towards law enforcement and the court system.

Looking at the current offense, [Hassinger] was convicted of hurling a Molotov cocktail, which is an extremely incendiary device, on both the courthouse and the sheriff's department. It's important to note that both these buildings are located in the heart of downtown Bellefonte with residential structures across the street on both sides of the courthouse and the

- 26 -

sheriff's department. The court also notes that these older homes and buildings have caught fire, looking at The Bush House and the Do De, which is across from the courthouse and adjacent to the courthouse annex. So as convicted, during the early morning hours, as the residents in the homes most likely slept, [Hassinger] committed arson which risks an extreme danger to those community members surrounding the courthouse and the sheriff's department.

The sentence imposed must calculate a protection of the public and recognize the gravity of [Hassinger's] actions against the safety of this community. [Hassinger's] actions, combined with his [lack of] remorsefulness and dangerous obsessiveness with the criminal justice system require a maximum sentence to ensure the protection of the public, and that the court finds a lesser sentence would depreciate the seriousness of the crimes and the protection of the public.

The court has reviewed the statement of reasons for sentence, pursuant to 18 Pa.C.S.[A.] Section 9721(b) submitted by the Commonwealth, and finds that those four paragraphs are consistent with what the [c]ourt is now putting on the record, and will sign that.

So, accordingly, the court will deviate from the standard and aggravated ranges and issue the following sentence[.]

N.T., 11/21/19, at 24-27 (unnecessary capitalization omitted).

Additionally, the trial court contemporaneously issued the following written statement of reasons for the sentence imposed pursuant to 18 Pa.C.S.A. §9721(b):

AND NOW, this 21st day of November, 2019, in addition to such other reasons set forth by this court, the sentence of imprisonment imposed this date is supported by the following:

1. The buildings targeted by [Hassinger's] acts of arson represent key institutions of justice whose functions include the protection of constitutional and statutory rights, providing citizens with a forum to peaceably resolve their disputes, and ensuring the peace and

dignity of the community through the orderly, accountable administration of the law.

2. [Hassinger] has expressly rejected all attempts at rehabilitation throughout the course of his 30 year history with the criminal justice system.

3. Throughout the entire course of these proceedings, [Hassinger] has exhibited no remorse for his criminal acts.

4. The evidence presented during the trial demonstrates that [Hassinger] harbors extreme animosity toward the court system generally and law enforcement in particular. This Court specifically finds that this animosity, joined to [Hassinger's] history of violent, impulsive criminal conduct, including the present arson offenses, render him a danger to the community and, specifically, those persons involved in the administration of justice. As such, [Hassinger's] rehabilitative needs require that he be subjected to a lengthy term of imprisonment in a state correctional institute.

Statement of Reasons for Sentence, 11/22/19, at 1-2.

Based on our review, we conclude that the trial court made a sufficient and adequately informed contemporaneous statement when it imposed Hassinger's sentence. Additionally, the record demonstrates that the court took into consideration all relevant mitigating and aggravating factors when fashioning that sentence.

First, the court was fully informed by a PSI, which the court discussed on the record. *See* N.T., 11/21/19, at 23-27. Importantly, where a PSI exists, and it is clear the sentencing court reviewed it, we presume that the sentencing judge was aware of the relevant information regarding the

defendant's character and weighed those considerations along with mitigating statutory factors. *See Commonwealth v. Devers*, 546 A.2d 12 (Pa. 1988). Thus, we presume that the trial court was adequately informed of Hassinger's mental health issues, and factored them into its sentencing decision.

The court also considered Hassinger's extensive criminal record spanning more than three decades, his failure to rehabilitate, his lack of remorse for his crimes, and his refusal to accept any responsibility for his actions. The court discussed the gravity of the offenses, and the potential devastation and loss of life that could have resulted from Hassinger's actions. Finally, the court considered Hassinger's dangerous obsessiveness and extreme animus toward the Centre County court system in general and law enforcement personnel in particular, as well as his unpredictable, impulsive and violent behavior toward the court system and law enforcement. In light of all these facts, the trial court determined that it was necessary to deviate from the sentencing guidelines because a more lenient sentence would not be consistent with the seriousness of the crimes in question, the need to protect the public from the gravity of danger presented by Hassinger, and his lack of remorse and accountability.

As we discern no abuse of discretion by the trial court in fashioning Hassinger's sentence, we affirm his judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>07/09/2021</u>